## CALIFORNIA *v.* BUZARD.

No. 40.  Argued November 16, 1965.—Decided January 18, 1966.

*Doris H. Maier,* Assistant Attorney General of California, argued the cause for petitioner. With her on the briefs were *Thomas C. Lynch,* Attorney General, and *Edsel W. Haws,* Deputy Attorney General.

*Thomas Keister Greer* argued the cause for respondent. With him on the brief was *C. Ray Robinson.*

*Acting Solicitor General Spritzer, Acting Assistant Attorney General Jones* and *I. Henry Kutz* filed a memorandum for the United States, as *amicus curiae,* urging reversal.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Section 514 of the Soldiers' and Sailors' Civil Relief Act of 1940, 56 Stat. 777, as amended, provides a nonresident serviceman present in a State in compliance with military orders with a broad immunity from that State's personal property and income taxation. Section 514 (2)(b) of the Act further provides that

"the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to

motor vehicles or the use thereof: *Provided,* That the license, fee, or excise required by the State . . . of which the person is a resident or in which he is domiciled has been paid." [1]

The respondent here, Captain Lyman E. Buzard, was a resident and domiciliary of the State of Washington stationed at Castle Air Force Base in California. He had purchased an Oldsmobile while on temporary duty in Alabama, and had obtained Alabama license plates for it by registering it there. On his return, California refused to allow him to drive the car on California high-

---

[1] 50 U. S. C. App. § 574 (2)(b). Section 514, 50 U. S. C. App. § 574, reads in relevant part as follows:

"(1) For the purposes of taxation in respect of any person, or of his *personal* property, income, or gross income, by any State, . . . such person shall not be deemed to have lost a residence or domicile in any State, . . . solely by reason of being absent therefrom in compliance with military or naval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, . . . while, and solely by reason of being, so absent. For the purposes of taxation in respect of the *personal* property, income, or gross income of any such person by any State, . . . of which such person is not a resident or in which he is not domiciled, . . . *personal property shall not be deemed to be located or present in or to have a situs for taxation in such State, Territory, possession, or political subdivision, or district.* . . .

"(2) *When used in this section, (a) the term 'personal property' shall include tangible and intangible property (including motor vehicles), and (b) the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof: Provided, That the license, fee, or excise required by the State . . . of which the person is a resident or in which he is domiciled has been paid."* (50 U. S. C. App. § 574.)

The unitalicized text was enacted in 1942, 56 Stat. 777. Concern whether nonresident servicemen were sufficiently protected from personal property taxation by host States led to a clarifying amendment in 1944, 58 Stat. 722. That amendment gave § 514 its two subsections. The italicized words in subsection (1) are the relevant additions to the original section. Subsection (2) was entirely new.

ways with the Alabama plates, and, since he had not registered or obtained license tags in his home State, demanded that he register and obtain license plates in California. When he sought to do so, it was insisted that he pay both the registration fee of $8 imposed by California's Vehicle Code [2] and the considerably larger "license fee" imposed by its Revenue and Taxation code.[3] The license fee is calculated at "two (2) percent of the market value of the vehicle," § 10752, and is "imposed . . . in lieu of all taxes according to value levied for State or local purposes on vehicles . . . subject to registration under the Vehicle Code . . . ." § 10758. Captain Buzard refused to pay the 2% fee,[4] and was prosecuted and convicted for violating Vehicle Code § 4000, which provides that "[N]o person shall drive . . . any motor vehicle . . . upon a highway unless it is registered and the appropriate fees have been paid under this code." The conviction, affirmed by the District Court of Appeal, 38 Cal. Rptr. 63, was reversed by the Supreme Court of California, 61 Cal. 2d 833, 395 P. 2d 593. We granted certiorari, 380 U. S. 931, to consider whether § 514 barred California from exacting the 2% tax as a condition of registering and licensing Captain Buzard's car. We conclude that it did, and affirm.

The California Supreme Court's reversal of Captain Buzard's conviction depended on its reading of the

[2] The relevant provisions of the Vehicle Code, enacted in 1935, and recodified in 1959, are §§ 4000, 4750 and 9250.

[3] The relevant provisions of the Revenue and Taxation Code, enacted in 1939, are §§ 10751, 10752 and 10758.

[4] Captain Buzard did not have sufficient cash to pay the $8 registration fee and the approximately $100 demanded in payment of the 2% tax and penalties. He testified without contradiction that at that time he "didn't refuse to pay" the tax. "He [the registration officer] said, 'Do you want to pay it now?' and I said, 'I don't have the money in cash with me, will you accept a check?' and he said, 'No.'" It was thereafter that Captain Buzard asserted his contention that the tax could not legally be assessed.

words "required by" in the proviso of § 514 (2)(b). In the context of the entire statute and its prior construction, it gave those words the effect of barring the host State from imposing a motor vehicle "license, fee, or excise" unless (1) there was such a tax owing to and assessed by the home State and (2) that tax had not been paid by the serviceman. The mandatory registration statute of Washington, as of most States, imposes the duty to register only as to cars driven on its highways, and Captain Buzard had not driven his car in Washington during the registration year. The court reasoned that there was thus no "license, fee, or excise" owing to and assessed by his home State. Since there was on this view no tax "required by" Washington, the court concluded that California could not impose its tax, even though Captain Buzard had not paid any Washington tax.

If this reading of the phrase "required by" in the proviso were correct, no host State could impose any tax on the licensing or registration of a serviceman's motor vehicle unless he had not paid taxes actually owing to and assessed by his home State. If the serviceman were under no obligation to his home State, and payment of taxes was a prerequisite of registration or licensing under the host State statutes, the host State authorities might consider themselves precluded from registering and licensing his car. The California court did not confront this consequence of its construction, because it regarded the relevant provisions of California statutes as allowing registration and licensing whether or not taxes were paid; hence, the possibility of unregistered cars using the California highways was thought not to be at issue.[5] The court's construction, however, per-

---

[5] "Defendant does not contend that California may not, as an exercise of its police power, require him to register his automobile. In fact, his attempt to register the vehicle independently of the

tained to the federal, not the state, statute; if correct, it would similarly restrict the imposition of other host States' registration and licensing tax provisions, whether or not they are as flexible as California's. We must therefore consider the California court's construction in the light of the possibility that in at least some host States, it would permit servicemen to escape registration requirements altogether.

Thus seen, the California court's construction must be rejected. Although little appears in the legislative history to explain the proviso,[6] Congress was clearly concerned that servicemen stationed away from their home State should not drive unregistered or unlicensed motor vehicles. Every State required in 1944, and requires now, that motor vehicles using its highways be registered and bear license plates. Such requirements are designed to facilitate the identification of vehicle

---

payment of fees and penalties was frustrated by the department. Defendant's position is simply that the Soldiers' and Sailors' Civil Relief Act of 1940 . . . prohibits the collection of such fees as an incident to a proper exercise of the police power or otherwise. As a consequence of the narrow question thus raised by the defendant, contentions which look to the purpose of registration in furtherance of proper law enforcement and administration fail to address themselves to the issue." 61 Cal. 2d, at 835, 395 P. 2d, at 594.

The statutory scheme severs the 2% tax provision of the Revenue and Taxation Code from the flat registration fee of $8 requirement in the Vehicle Code. Vehicle Code § 4000, under which respondent was prosecuted, refers only to payments of "the appropriate fees . . . under this code" and Vehicle Code § 4750 refers only to "the required fee." (Emphasis supplied.) The severability clause of the Revenue and Taxation Code, § 26, provides that if application of any provision of that Code to "any person or circumstance, is held invalid . . . the application of the provision to other persons or circumstances, is not affected."

[6] H. R. Rep. No. 1514, 78th Cong., 2d Sess.; S. Rep. No. 959, 78th Cong., 2d Sess. There were no debates.

owners and the investigation of accidents, thefts, traffic violations and other violations of law. Commonly, if not universally, the statutes imposing the requirements of registration or licensing also prescribe fees which must be paid to authorize state officials to issue the necessary documents and plates. To assure that servicemen comply with the registration and licensing laws of some State, whether of their home State or the host State, we construe the phrase "license, fee, or excise *required by* the State . . ." as equivalent to "license, fee, or excise *of* the State. . . ." Thus read, the phrase merely indicates Congress' recognition that, in one form or another, all States have laws governing the registration and licensing of motor vehicles, and that such laws impose certain taxes as conditions thereof. The serviceman who has not registered his car and obtained license plates under the laws "of" his home State, whatever the reason, may be required by the host State to register and license the car under its laws.

The proviso is to be read, at the least, as assuring that § 514 would not have the effect of permitting servicemen to escape the obligation of registering and licensing their motor vehicles. It has been argued that § 514 (2)(b) also represents a congressional judgment that servicemen should contribute to the costs of highway maintenance, whether at home or where they are stationed, by paying whatever taxes the State of registration may levy for that purpose. We conclude, however, that no such purpose is revealed in the section or its legislative history and that its intent is limited to the purpose of assuring registration. Since at least the 2% tax here involved has been held not essential to that purpose as a matter of state law, we affirm the California Supreme Court's judgment.

It is plain at the outset that California may collect the 2% tax only if it is a "license, fee, or excise" on a motor

vehicle or its use. The very purpose of § 514 in broadly freeing the nonresident serviceman from the obligation to pay property and income taxes was to relieve him of the burden of supporting the governments of the States where he was present solely in compliance with military orders. The statute operates whether or not the home State imposes or assesses such taxes against him. As we said in *Dameron* v. *Brodhead,* 345 U. S. 322, 326, ". . . though the evils of potential multiple taxation may have given rise to this provision, Congress appears to have chosen the broader technique of the statute carefully, freeing servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders. It saved the sole right of taxation to the state of original residence whether or not that state exercised the right." Motor vehicles were included as personal property covered by the statute. Even if Congress meant to do more by the proviso of § 514 (2)(b) than insure that the car would be registered and licensed in one of the two States, it would be inconsistent with the broad purposes of § 514 to read subsection (2)(b) as allowing the host State to impose taxes other than "licenses, fees, or excises" when the "license, fee, or excise" of the home State is not paid.[7]

Although the Revenue and Taxation Code expressly denominates the tax "a license fee," § 10751, there is no persuasive evidence Congress meant state labels to be conclusive; therefore, we must decide as a matter of federal law what "licenses, fees, or excises" means in the statute. See *Storaasli* v. *Minnesota,* 283 U. S. 57, 62. There is nothing in the legislative history to show that Congress intended a tax not essential to assure registration, such as the California "license fee," to fall within the

---

[7] Contra, *Whiting* v. *City of Portsmouth,* 202 Va. 609, 118 S. E. 2d 505; *Snapp* v. *Neal,* 250 Miss. 597, 164 So. 2d 752, reversed today, *post,* p. 397.

394

category of "licenses, fees, or excises" host States might impose if home State registration was not effected. While it is true that a few state taxes in effect in 1944, like the California 2% "license fee," were imposed solely for revenue purposes, the great majority of state taxes also served to enforce registration and licensing statutes.[8] No discussion of existing state laws appears in the Committee Reports. There is thus no indication that Congress was aware that any State required that servicemen contribute to the costs of highway maintenance without regard to the relevance of such requirements to the non-revenue purposes of state motor vehicle laws.

---

[8] Most States in 1944, as now, conditioned registration and the issuance of license plates upon the payment of a registration fee measured by horsepower, weight or some combination of these factors. See, e. g., Del. Rev. Code 1935, § 5564 (weight); Page's Ohio Gen. Code (1945 Repl. Vol.), § 6292 (weight); Mo. Rev. Stat. Ann. 1942, § 8369 (horsepower); N. J. Rev. Stat. 1937, § 39:3–8 (horsepower); Conn. Gen. Stat. Rev. 1930, § 1578 (cubic displacement); Iowa Code 1939, § 5008.05 (value and weight); Digest Ark. Stat. 1937, § 6615 (horsepower and weight).

Other States charged a flat fee. See, e. g., Ore. Comp. Laws 1940, §§ 115–105, 115–106; Ariz. Code 1939, § 66–256; Alaska Comp. Laws 1933, § 3151.

A few States, such as California, charged both a flat registration fee and a larger, variable "license fee" measured by vehicle value. See, e. g., Cal. Vehicle Code 1935, §§ 140, 148, 370, Cal. Rev. & Tax. Code 1939, §§ 10751–10758; Remington's Wash. Rev. Stat. (1937 Repl. Vol.), §§ 6312–16, 6312–102; compare Miss. Code 1942, §§ 9352–19, 9352–03 (certificate of payment of ad valorem tax required of those who must pay it); Wyo. Comp. Stat. 1945, §§ 60–103, 60–104 (flat fee plus ad valorem fee; ad valorem fee to be paid only by persons actually driving in the State).

The statutes commonly recited that these fees, whatever their measure, were imposed for the privilege of using the State's highways; the proceeds were usually devoted to highway purposes. Even where property value was the measure of the fees, they were characterized as privilege, not property, taxes. See, e. g., Ingels v. Riley, 5 Cal. 2d 154, 53 P. 2d 939 (1936).

The conclusion that Congress lacked information about the California practice does not preclude a determination that it meant to include such taxes, levied only for revenue, as "licenses, fees, or excises." But in deciding that question in the absence of affirmative indication of congressional meaning, we must consider the overall purpose of § 514 as well as the words of subsection (2)(b). Taxes like the California 2%, "license fee" serve primarily a revenue interest, narrower in purpose but no different in kind from taxes raised to defray the general expenses of government.[9] It is from the burden of taxes serving such ends that nonresident servicemen were to be freed, in the main, without regard to whether their home States imposed or sought to collect such taxes from them. *Dameron* v. *Brodhead, supra.* In recent amendments, Congress has reconfirmed this basic purpose.[10] We do not think that subsection (2)(b) should be read as impinging upon it. Rather, reading the Act, as we must, "with an eye friendly to those who dropped their affairs to answer their country's call," *Le Maistre* v. *Leffers*, 333 U. S. 1, 6, we conclude that subsection (2)(b) refers only to those taxes which are essential to the functioning of the host State's licensing and registration laws in their application to the motor vehicles of nonresident servicemen. Whether the 2% tax is within the reach of the federal immunity is thus not to be tested, as California argues, by whether its inclusion frustrates the administration of California's tax policies. The test, rather, is whether the inclusion would deny the State power to

---

[9] Indeed, the 2% "license fee" was adopted in 1935 as a substitute for local ad valorem taxation of automobiles, which had proved administratively impractical. Stockwell, Studies in California State Taxation, 1910–1935, at pp. 108–110 (1939); Final Report of the California Tax Commission 102 (1929). Its basis remains the location of the automobile in the State.

[10] Pub. L. § 87–771, 76 Stat. 768.

enforce the nonrevenue provisions of state motor vehicle legislation.

Whatever may be the case under the registration and licensing statutes of other States, California authorities have made it clear that the California 2% tax is not imposed as a tax essential to the registration and licensing of the serviceman's motor vehicle.[11] Not only did the California Supreme Court regard the statutes as permitting registration without payment of the tax, but the District Court of Appeal, in another case growing out of this controversy, expressly held that "[t]he registration statute has an entirely different purpose from the license fee statutes, and it is clearly severable from them." *Buzard* v. *Justice Court,* 198 Cal. App. 2d 814, 817, 18 Cal. Rptr. 348, 349–350.[12] The California Supreme Court also held, in effect, that invalidity of the "license fee" as applied was a valid defense to prosecution under Vehicle Code § 4000. In these circumstances, and since the record is reasonably to be read as showing that Captain Buzard would have registered his Oldsmobile but for the demand for payment of the 2% tax, the California Supreme Court's reversal of his conviction is

*Affirmed.*

---

[11] It is not clear from the California courts' opinions whether they regard the $8 registration fee as a fee essential to the registration and licensing of the motor vehicle. Therefore that question remains open for determination in the state courts.

[12] See note 5, *supra.*