**UNITED STATES of America, Plaintiff-Appellee,**

v.

**COUNTY OF CHAMPAIGN, ILLINOIS, et al., Defendants-Appellants.**

No. 75-1242.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1975.

Decided Nov. 4, 1975.

---

James R. Burgess, Jr., State's Atty., John R. Delamar, Asst. State's Atty., Urbana, Ill., for defendants-appellants.

Scott P. Crampton, Asst. Atty. Gen., William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before PELL and STEVENS, Circuit Judges, and PERRY, Senior District Judge.*

STEVENS, Circuit Judge.

The United States brought this action to enjoin the County of Champaign from levying a tax on mobile homes owned by nonresident servicemen stationed at Chanute Air Force Base near Rantoul, Illinois. The principal question presented is whether the Illinois tax, measured by the size of the mobile home and payable annually, is a tax "in respect of personal

---

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

property" within the meaning of § 514 of the Soldiers' and Sailors' Civil Relief Act, as amended, 50 U.S.C. App. § 574.

In 1973 the Illinois General Assembly enacted the Illinois Mobile Home Privilege Tax, Ill.Rev.Stat. ch. 120, §§ 1201–1210. The statute authorizes an annual tax, payable to the county treasurer of the county in which the mobile home is located, computed at the rate of 15 cents per square foot.

On March 21, 1974, the Illinois Attorney General issued an opinion that the tax cannot be assessed against nonresident members of the Armed Forces of the United States because of the prohibition contained in § 514 of the Soldiers' and Sailors' Civil Relief Act. He reasoned that since the tax is "imposed with respect to personal property and is collected annually, and its revenue is used to provide for general local governmental services, it falls within the broad category of property and income taxes from which nonresident servicemen are exempt."

The Assessor of Champaign County formed a contrary opinion and proceeded to make assessments against 150 members of the U. S. Air Force stationed at Chanute Air Force Base. Collection proceedings were commenced against 27 servicemen. Thereafter, at the request of the Department of the Air Force, the United States brought this action against the County and appropriate officials thereof to enjoin their collection of this tax. Based on uncontradicted facts set forth in the pleadings, the district court first entered a preliminary injunction and then a summary judgment in favor of the government.

Defendants appeal, contending (1) that the prohibition contained in the federal statute is applicable only to *ad valorem* taxes, and this is not such a tax; (2) that the action is barred by 28 U.S.C. § 1341; and (3) that the exemption in the federal statute is unconstitutional.

Appellants acknowledge that their constitutional argument is foreclosed by *Dameron v. Brodhead,* 345 U.S. 322, 73 S.Ct. 721, 97 L.Ed. 1041, but raise the point in order to ask the Supreme Court to reexamine that decision. We, of course, do not question it.

I.

Apart from 28 U.S.C. § 1341,[1] it would be entirely appropriate for the United States to bring this action to protect the members of the Armed Forces from the burden of defending against the assessment of a state tax of dubious validity. The controlling issue in the litigation turns on the construction of a federal statute. The correct interpretation of that statute will determine the rights of a large number of individuals in the federal service who, individually, may have an inadequate stake in the issue to warrant litigating the matter to a conclusion in the state courts and, if necessary, in the United States Supreme Court. The purpose of the Soldiers' and Sailors' Civil Relief Act, which is to protect servicemen from the burden of certain local taxes when stationed away from home, also supports a procedure that will protect them from the burden of litigating their right to an exemption from such a tax.

We recognize that a literal reading of § 1341 would bar this action. It is settled, however, that § 1341 does not "act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions." *Dept. of Employment v. United States,* 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414. The reasoning which excludes such suits from § 1341 is equally applicable to suits brought to protect the interests of personnel in the Armed Forces of the United States. *See United States v. Arlington County, Commonwealth of Virginia,* 326 F.2d 929 (4th Cir. 1964). The Supreme Court appears

---

1. That statute provides:

    "The district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

to regard this point as having been put to rest by the *Arlington County* case. *See Sullivan v. United States,* 395 U.S. 169, 170 n.2, 89 S.Ct. 1648, 23 L.Ed.2d 182.

## II.

■ Section 514 of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, provides that "For the purposes of taxation . . . in respect of the personal property" of a serviceman by a state in which he is neither a resident nor a domiciliary, his "personal property shall not be deemed to be located or present in or to have a situs for taxation in such State."[2] The effect of this provision is to forbid a state or its subdivisions to impose a tax "in respect of" the serviceman's personal property, if the incidence of the tax is based on the location or situs of personal property in the taxing jurisdiction.

The statute was enacted to protect servicemen from the risk of double taxation occasioned by their temporary duty in a state other than their domicile. Since the ownership of personal property may give rise to a tax obligation in both the state in which the owner resides and also in the state in which the property may be located during a given taxable year, the statute achieves its purpose by giving the serviceman an exemption from a tax imposed by a state of which he is neither a resident nor a domiciliary. *See Sullivan v. United States,* 395 U.S. 169 at 177, 180, 184, 89 S.Ct. 1648.

Consistently with this simple description of the statutory purpose, the Supreme Court has held that the exemption is not applicable to sales or use taxes imposed on a particular transaction, in contrast to an annually recurring tax imposed on the ownership of property. In *Sullivan* the Court explained:

Section 514 does not relieve servicemen stationed away from home from all taxes of the host State. It was enacted with the much narrower design "to prevent multiple State taxation of the property." And the substantial risk of double taxation under multi-state ad valorem property taxes does not exist with respect to sales and use taxes. Like Connecticut, nearly every State which levies such taxes provides a credit for sales or use taxes paid on the transaction to another State. Of course it is true, as we held in *Dameron v. Brodhead,* 345 U.S. 322, 73 S.Ct. 721, 97 L.Ed. 1041, that § 514 prevents imposition of ad valorem property taxes even though the serviceman's home State does not tax the property. But the predominant legislative purpose nonetheless remains highly relevant in determining the scope of the exemption, and the absence of any significant risk of double taxation under state sales and use taxes generally is therefore strong evidence of congressional intent not to include them in § 514.

395 U.S. at 180, 89 S.Ct. at 1654 (footnotes omitted).

Earlier in the Sullivan opinion, the Court stated:

The legislative history of the 1942 enactment and the 1944 and 1962 amendments of § 514 reveals that Congress intended the Act to cover only annually recurring taxes *on* property—the familiar ad valorem personal property tax. Thus, the reports advert to the possibility that servicemen ordered to move around the country—as they were increasingly during World War II—might have their property taxed by more than one State "within the same calendar year." And the reports throughout refer explicitly to "personal-property taxes on property." The language of these reports is simply irreconcilable with the proposition that Congress thought the Act would apply to a tax which, like the sales or use tax, does not apply annually to all personal property within the

---

**2.** 54 Stat. 1178 as amended (50 U.S.C. App. § 574).

State but is imposed only once and then only when there has been a retail sales transaction.

395 U.S. at 176–177, 89 S.Ct. at 1653 (emphasis the Court's) (footnotes omitted).

■ Appellants read this language as limiting the exemption to *ad valorem* taxes—that is, taxes measured by the value of the taxed property. They argue that a tax based on the size of a mobile home is not such a tax. Without reaching the government's contention the the area of the mobile home is merely used as a measure of value and therefore the Illinois tax may properly be characterized as an *ad valorem* tax, we reject appellants' reading of the *Sullivan* opinion. We interpret that case as holding that the exemption is inapplicable to one-time transaction taxes, such as the familiar sales and use taxes, but does apply to annually recurring taxes on personal property of which the traditional *ad valorem* personal property tax is the best known example. We find nothing in either the purpose or the language of the statute that would justify a distinction between an annually recurring tax on the ownership of personal property measured by the value of the mobile home and an otherwise identical tax measured by the size of the home.

■ Although some attempt was made to characterize this tax as a true privilege tax by showing that benefits are received by mobile homeowners in the form of State regulation of mobile home parks, this benefit is comparable to the general benefits of government which all taxpayers receive in return for taxes paid to the government's general revenue fund. In *California v. Buzard,* 382 U.S. 386, 86 S.Ct. 478, 15 L.Ed.2d 436, the Court said, referring to the contention that Congress meant to exclude from the operation of the Act vehicle taxes intended to defray the costs of highway maintenance:

Taxes like the California 2% "license fee" serve primarily a revenue interest, narrower in purpose but no differ-

ent in kind from taxes raised to defray the general expenses of government. It is from the burden of taxes serving such ends that nonresident servicemen were to be freed, in the main, without regard to whether their home States imposed or sought to collect such taxes from them.

382 U.S. at 395, 86 S.Ct. at 484 (footnote omitted). The same reasoning is applicable here.

It is undisputed that the tax is assessed against personal property. We hold that it is a tax "in respect of" such property within the meaning of the federal statute.

Affirmed.