580 F.Supp. 512 (1984)
UNITED STATES of America, Plaintiff,
v.
STATE of KANSAS, Defendant.
No. 82-4114.
United States District Court, D. Kansas.
February 8, 1984.
*513 Jim J. Marquez, U.S. Atty., Alleen S. Castellani, Asst. U.S. Atty., Topeka, Kan., Richard Correa, Tax Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff.
*514 Alan F. Alderson, Gen. Counsel, Larry L. Hapgood, Topeka, Kan., for defendant.

MEMORANDUM AND ORDER
ROGERS, District Judge.
Plaintiff, by this lawsuit, is asking the court to declare certain Kansas tax laws null and void because the laws conflict with the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 574 and, therefore, violate the Supremacy Clause of the Constitution. The state statutes in question require military personnel who are not residents or domiciliaries of Kansas to reflect military income on Kansas individual income tax returns or on joint returns filed with a spouse. In turn, the military income is included in a formula to determine the rate of taxation applied to the taxpayer's Kansas income. Under the progressive state income tax system, the calculation of the military income raises the rate of taxation upon the nonmilitary Kansas income of the armed services member and spouse.
Defendant denies that Kansas tax laws conflict with the Soldiers' and Sailors' Civil Relief Act and has raised various affirmative defenses to this lawsuit. Plaintiff has moved for summary judgment. Plaintiff has also moved to strike the affirmative defenses pleaded by defendant. The court is now ready to rule upon these pending motions.
The factual statement relied upon by plaintiff in support of the summary judgment motion may be considered uncontroverted. Defendant's response to the summary judgment motion indicates that several of the enumerated factual statements are controverted. But, no support for defendant's opposition is suggested. Plaintiff has taken the step of supporting its factual statement with an affidavit from Major Jeffrey S. Titrud. No countervailing affidavit has been supplied by defendant. In addition, defendant's response to the summary judgment motion tacitly admits that this case turns upon legal issues concerning the interpretation of the Soldiers' and Sailors' Civil Relief Act and the viability of defendant's affirmative defenses. On this basis, the court concludes that there is no genuine issue of material fact barring the issuance of summary judgment in favor of either side in this case.
It is agreed that the Kansas tax laws require that the rate of taxation upon the Kansas income of nonresidents be determined by totaling the federal adjusted gross income and making various statutorily mandated adjustments. See K.S.A. 79-32,110, 79-32,116, 79-32,117. This figure is called the "Kansas adjusted gross income." K.S.A. 79-32,117. After Kansas deductions and Kansas personal exemptions are applied to the Kansas adjusted gross income, the result is called the "Kansas taxable income." K.S.A. 79-32,116. The same rate of taxation applied to a resident taxpayer's Kansas taxable income is applied to a nonresident taxpayer's Kansas taxable income. The amount of Kansas income tax paid by a nonresident, however, is reduced by multiplying the product of the tax rate and the Kansas taxable income by the ratio of the nonresident's income earned in Kansas (the "modified Kansas source income") to his Kansas adjusted gross income. K.S.A. 79-32,110(b). In the case of nonresident military personnel, compensation paid by the United States for service in the armed forces is not deemed income earned in Kansas or "modified Kansas source income". K.S.A. 79-32,109(h).
It is further agreed that the operation of these state tax laws has the effect of raising the rate of taxation upon nonresident military taxpayers' Kansas income, higher than if the military compensation was excluded from the calculation of the Kansas adjusted gross income and Kansas taxable income. A similar result occurs when a joint return is filed by a nonresident with military income and Kansas nonmilitary income. K.S.A. 79-32,115. In other words, the rate of taxation on the Kansas income is determined after a consideration of the nonresident's military compensation. It is beyond dispute that there are nonresident military personnel in Kansas who are affected *515 by the above-described operation of the Kansas tax laws.
The key issue in this case is whether the Kansas statutes in question conflict with the Soldiers' and Sailors' Civil Relief Act. This statute requires that the domicile of military personnel not change for purposes of taxation when such personnel are absent from the domicile in compliance with military orders. The Act further requires that the military compensation of such personnel "not be deemed income for services performed within or from ... sources within" states other than the domicile state. 50 U.S.C.App. § 574.
In construing the language of the Soldiers' and Sailors' Civil Relief Act, we are mindful that the purpose of the Act is to broadly free servicemen of the burden of supporting the governments of the states where they are present solely in compliance with military orders. California v. Buzard, 382 U.S. 386, 393, 86 S.Ct. 478, 483, 15 L.Ed.2d 436 (1966); Dameron v. Brodhead, 345 U.S. 322, 326, 73 S.Ct. 721, 723, 97 L.Ed. 1041 (1953). We must read the act "`with an eye friendly to those who dropped their affairs to answer their country's call.'" California v. Buzard, supra, 382 U.S. at 395, 86 S.Ct. at 484 (quoting, LeMaistre v. Leffers, 333 U.S. 1, 6, 68 S.Ct. 371, 373, 92 L.Ed. 429 (1948)).
It is also important to remember that our task in considering Supremacy Clause arguments "is `to determine whether under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (quoting, Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). In performing this task, we should not seek out conflicts between state and federal regulation where none clearly exist. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 130, 98 S.Ct. 2207, 2216, 57 L.Ed.2d 91 (1978).
We are convinced in this case that the Kansas tax laws do not operate in conflict with the Soldiers' and Sailors' Civil Relief Act. Our first reason for this conclusion is that the plain language of the Soldiers' and Sailors' Civil Relief Act does not bar the consideration of military compensation in determining the rate of taxation upon the Kansas income of nonresidents. Instead, the Act bars the State from deeming a nonresident's military compensation as income for services performed within or from sources within Kansas. This directive is incorporated in K.S.A. 79-32,110(h) which defines "modified Kansas source income" to exclude compensation paid by the United States for military service. Of course, military compensation is included in the determination of "Kansas adjusted gross income" and "Kansas taxable income". These terms, however, are not intended to mean the income of nonresidents for services performed within or from sources within Kansas. Rather, they are used to calculate the rate of taxation upon such income. Hence, the plain language of the federal and state laws in question do not conflict. Kansas has implemented the directives of the federal law and the federal law does not prohibit the operation of the Kansas statutes attacked by plaintiff.
Our analysis of the legislative purpose behind the Soldiers' and Sailors' Civil Relief Act further supports this finding. The "predominant" purpose of the Act is to prevent multiple state taxation. Sullivan v. United States, 395 U.S. 169, 180, 89 S.Ct. 1648, 1654, 23 L.Ed.2d 182 (1969). The operation of the Kansas tax statutes tends only to increase the rate of taxation upon Kansas income. Whatever the rate of taxation, the Kansas statutes could never require a nonresident taxpayer to pay more than his Kansas income or, in other words, to pay taxes on part of his military compensation. Thus, the Kansas laws in question are not inconsistent with the predominant purpose of the Soldiers' and Sailors' Civil Relief Act.
*516 Of course, this interpretation does not serve the broadly stated purpose of protecting military personnel from the burdens of supporting state government. But, this generalized interest is not inviolable. In Sullivan v. United States, supra, the Court, in deciding that Congress did not intend to protect service personnel from all forms of state taxation, affirmed the application of state sales and use taxes against servicemen. Similarly, we hold that Congress did not intend to exempt servicemen from the operation of a progressive state income tax system which gauges the ability to pay taxes on Kansas income by considering a taxpayer's resident and nonresident income. Certainly, the plain language of the Soldiers' and Sailors' Civil Relief Act does not reflect such an intention.
Plaintiff admits that the legislative history of the Soldiers' and Sailors' Civil Relief Act does not address the practice of considering nonresident military income in determining the rate of taxation upon income derived within the taxing state. Plaintiff contends that Congress did not consider this practice in 1942 when the Act was passed because the practice was widely considered unfair and unconstitutional. Although, according to plaintiff, Congress did not contemplate the tax practices under attack in this case, plaintiff contends this court should construe the Act as prohibiting such practices because the Congressional and national mind set in 1942 was against them.
We reject this argument for three reasons. First, the premise that Congress did not consider the possibility of states adopting the tax practices in question here, may not be accurate. The authorities cited in plaintiff's brief indicate that in two Supreme Court cases prior to the enactment of the Soldiers' and Sailors' Civil Relief Act, similar state tax practices were sanctioned. Maxwell v. Bugbee, 250 U.S. 525, 40 S.Ct. 2, 63 L.Ed. 1124 (1919) (progressive tax rates keyed to the value of a decedent's estate regardless of whether the property was located within the taxing state); Great Atlantic and Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193 (1937) (progressive franchise tax rates keyed to corporation's number of stores regardless of whether stores are within the taxing state). In addition, the legal commentary cited by plaintiff contemplated the possibility of states and courts sanctioning the application of these practices to income tax systems. Lowndes, Rate and Measure in Jurisdiction to Tax Aftermath of Maxwell v. Bugbee, 49 HARV.L.REV. 756, 768-770 (1936). All of this indicates that Congress may have been aware of the tax practices at issue here when it passed the Soldiers' and Sailors' Civil Relief Act. Plaintiff further cites cases of a similar vintage in which various courts condemned these tax practices. These cases provide additional evidence that the use of taxation schemes like those in question here, was a matter of debate and controversy of which one may assume Congress was aware. If Congress was aware of similar tax methods but failed to prohibit them in the Act, this court should not imply such a prohibition merely on the basis of a policy of protecting military personnel from state taxation.
A second reason for rejecting plaintiff's legislative history arguments is that plaintiff's position asks this court to construe the statute with an eye to deciding how Congress would have confronted this issue in 1942, rather than how Congress did confront this issue at that time. If Congress in 1942 did not anticipate the operation of the Kansas tax laws or decided that the courts had proscribed the operation of the Kansas tax laws as unconstitutional, then there is no reason to construe the Soldiers' and Sailors' Civil Relief Act as if it addressed these practices. If a "loophole" in the law has developed because states and courts no longer consider these practices unconstitutional and unfair (see Wheeler v. State of Vermont, 127 Vt. 361, 249 A.2d 887 (1969)), the loophole should be closed by legislative actionnot by a strained judicial construction of the law.
This leads to the third reason for rejecting plaintiff's legislative history arguments. For some years now, Congress has *517 undoubtedly been aware of the tax practices in question. Yet, Congress has failed to take specific action to bar states from increasing the rate of income taxation of nonresidents on the basis of military compensation. Congress amended the Soldiers' and Sailors' Civil Relief Act in 1962 to clarify that the tax exemption extended to the use of motor vehicles owned by nonresident military personnel. Sullivan v. U.S., supra, 395 U.S. at 183, 89 S.Ct. at 1656. In the oral argument conducted upon the instant motions, it was stated that at least five states have laws such as those under fire here. There has been no effort by Congress, however, to "clarify" the statute to encompass these laws within the tax relief afforded servicemen. This is some evidence that Congress did not intend and still does not intend to prevent states from keying progressive rates of taxation to military compensation of nonresident servicemen.
To summarize, we are convinced that the Kansas tax laws do not stand as an obstacle to the accomplishment and execution of the full objectives and purposes of the Soldiers' and Sailors' Civil Relief Act, as those objectives and purposes are reflected in the plain language, contemporaneous context, and legislative history of the statute. "When a statute is plain and unambiguous and there is no evidence of a contrary purpose than the purpose appearing in the precise terms of the statute it transcends the judicial function to rewrite the statute to conform to considerations of policy." Manufacturers Hanover Trust Co. v. C.I.R., 431 F.2d 664, 668 (2d Cir.1970). Therefore, we reject the plaintiff's Supremacy Clause arguments.
In oral argument, plaintiff's counsel made the additional argument that the Kansas tax laws operate as a disincentive towards filing a joint federal tax return. This is because Kansas laws require a joint Kansas tax return to be filed if a joint federal return is filed. Of course, as previously discussed, the consideration of nonresident military income in the determination of Kansas income tax rates applies to joint returns filed by a nonresident. Plaintiff's counsel contends that this disincentive, impermissibly conflicts with the federal laws permitting persons to file joint tax returns.
There has been no showing that the alleged disincentive is a significant obstacle to the accomplishment of the goals of the joint return statute. The court is unwilling to strike down the Kansas tax statutes without a clear showing of such a conflict. Therefore, the court shall reject this argument for judgment in plaintiff's favor.
The court has given consideration to the affirmative defenses which are the subject of plaintiff's motion to strike. Since the court intends to direct judgment in favor of defendant on other grounds, it is not necessary to enter an extended discussion of the affirmative defenses. After due consideration, it is our opinion that the affirmative defenses are not applicable in this case and, therefore, plaintiff's motion to strike should be granted.
This does not alter our conclusion that the Kansas tax laws do not conflict with the Soldiers' and Sailors' Civil Relief Act. Therefore, the court shall deny plaintiff's motion for summary judgment and order that judgment be entered in favor of defendant.
IT IS SO ORDERED.