810 F.2d 935
 UNITED STATES of America, Plaintiff-Appellant,
v.
STATE OF KANSAS, Defendant-Appellee.
 No. 84-1492.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 28, 1987.
 
 Raymond W. Hepper, Tax Div., Dept. of Justice, Washington, D.C. (Benjamin Burgess, U.S. Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Tax Div., Dept. of Justice, Washington, D.C., with him on briefs), for plaintiff-appellant.
 James A.D. Bartle (William L. Edds, Gen. Counsel, with him on briefs), Legal Services Bureau, Kansas Dept. of Revenue, Topeka, Kan., for defendant-appellee.
 Before BARRETT, ANDERSON and TACHA, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Section 514 of the Soldiers' and Sailors' Civil Relief Act of 1940, Chapter 888, 54 Stat. 1178 (as amended), 50 U.S.C. app. Sec. 574 (1981) ("SSCRA" or "Act") prohibits a state from taxing the military pay of nonresident servicemen and women located in that state pursuant to orders. The sole issue in this case is whether certain Kansas income tax statutes[1] violate the SSCRA by taking the military pay of such nonresidents into account in determining the rate of income tax to be levied on their nonmilitary income earned in Kansas.
 
 
 2
 Kansas has a graduated state income tax (2% to 9%). Kan.Stat.Ann. Sec. 79-32,110(a) (1984). It is undisputed, therefore, that higher tax rates and, consequently, higher taxes on nonmilitary Kansas source income can result from including military pay in the state's rate-setting formula.[2] It is also undisputed that no direct tax is levied by Kansas on the military income of nonresident military personnel. The United States contends that taxing nonmilitary income at rates which are higher due to the inclusion of military income in the rate-setting calculation constitutes a "sophisticated scheme of indirect taxation," Brief for Appellant at 8, prohibited under the SSCRA. It filed a declaratory judgment action in the district court seeking to bar enforcement of the applicable Kansas income tax statutes on the ground that they are in conflict with the SSCRA and, therefore, invalid pursuant to the Supremacy Clause of the United States Constitution. Subsequently it filed a motion for summary judgment which, in a reasoned opinion by the district court, was denied, and judgment entered for the State of Kansas. United States v. Kansas, 580 F.Supp. 512 (D.Kan.1984). We are in general agreement with the opinion of the district court, and affirm its judgment dismissing the complaint.
 
 
 3
 A state law violates the Supremacy Clause and therefore must fall if it conflicts with a federal law or federal constitutional right. Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n, --- U.S. ----, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985); State Corp. Comm'n v. Federal Communications Comm'n, 787 F.2d 1421, 1425 (10th Cir.1986); Backus v. Panhandle Eastern Pipe Line Co., 558 F.2d 1373 (10th Cir.1977); Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824). Such a conflict exists if the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Determining whether such a conflict exists " 'is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict.' " Chicago & North Western Trans. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981) (quoting Perez v. Campbell, 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233 (1971)); United States v. Onslow County Bd. of Educ., 728 F.2d 628, 635 (4th Cir.1984). "The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." Rice v. Norman Williams Co., 458 U.S. 654, 659, 102 S.Ct. 3294, 3298, 73 L.Ed.2d 1042 (1982).
 
 
 4
 In interpreting and applying the SSCRA we must be
 
 
 5
 mindful that the purpose of the Act is to broadly free servicemen of the burden of supporting the governments of the states where they are present solely in compliance with military orders. California v. Buzard, 382 U.S. 386, 393 [86 S.Ct. 478, 483, 15 L.Ed.2d 436] (1966); Dameron v. Brodhead, 345 U.S. 322, 326 [73 S.Ct. 721, 723, 97 L.Ed. 1041] (1953).
 
 
 6
 580 F.Supp. at 515. We also must interpret the Act " 'with an eye friendly to those who dropped their affairs to answer their country's call.' " California v. Buzard, 382 U.S. 386, 395, 86 S.Ct. 478, 484, 15 L.Ed.2d 436 (1966) (quoting Le Maistre v. Leffers, 333 U.S. 1, 6, 68 S.Ct. 371, 373, 92 L.Ed. 429 (1948)); see also Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943).
 
 
 7
 Section 514 of the Act provides in pertinent part:
 
 Sec. 514. Residence for tax purposes
 
 8
 (1) For the purposes of taxation in respect of any person, or of his personal property, income, or gross income, by any State, Territory, possession, or political subdivision of any of the foregoing, or by the District of Columbia, such person shall not be deemed to have lost a residence or domicile in any State, Territory, possession, or political subdivision of any of the foregoing, or in the District of Columbia, solely by reason of being absent therefrom in compliance with military or naval orders, or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, Territory, possession, or political subdivision of any of the foregoing, or of the District of Columbia, while, and solely by reason of being, so absent. For the purposes of taxation in respect of the personal property, income, or gross income of any such person by any State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, of which such person is not a resident or in which he is not domiciled, compensation for military or naval service shall not be deemed income for services performed within, or from sources within, such State, Territory, possession, or political subdivision....
 
 
 9
 50 U.S.C. app. Sec. 574(1) (1981) (emphasis added). Both parties agree that the principal motive behind the provisions of the SSCRA granting a tax exemption to nonresident service personnel was to prevent the possibility of multiple state taxation of the income and property of such service personnel. See California v. Buzard, 382 U.S. at 393, 86 S.Ct. at 483; Dameron v. Brodhead, 345 U.S. 322, 326, 73 S.Ct. 721, 723, 97 L.Ed. 1041 (1953); H.R.Rep. No. 2198, 77th Cong., 2d Sess. (1942); S.Rep. No. 1558, 77th Cong., 2d Sess. (1942).
 
 
 10
 Neither the legislative history nor the plain language of the SSCRA prohibits the use of the described military income in formulas which set rates of taxation on other income. The United States steadfastly maintains that the potentially higher rates on Kansas source income constitute "an indirect tax on the military compensation of nonresident military personnel." Brief for Appellant at 8, 13 & 14 n. 6. It cites no authority in direct support of that conclusion and we disagree with it. There is here a potentially higher tax on Kansas source income, nothing more.
 
 
 11
 The obvious further inquiry is whether that potentially higher tax on Kansas taxable income constitutes a denial of due process or equal protection. The United States did not pursue any equal protection argument and it concedes the due process question, stating in its brief:
 
 
 12
 We fully recognize that the Supreme Court long ago made clear that the inclusion in a state taxing scheme of property not subject to direct taxation by the state, for the purpose of determining the rate of taxation to be applied to property that is subject to the state's taxing powers, does not violate the due process clause of the Fourteenth Amendment. See Maxwell v. Bugbee, 250 U.S. 525 [40 S.Ct. 2, 63 L.Ed. 1124] (1919); Great Atlantic and Pacific Tea Co. v. Grosjean, 301 U.S. 412 [57 S.Ct. 772, 81 L.Ed. 1193] (1937).
 
 
 13
 Brief for Appellant at 14-15. See also Wheeler v. State, 127 Vt. 361, 249 A.2d 887 (1969), appeal dismissed, 396 U.S. 4, 90 S.Ct. 24, 24 L.Ed.2d 4 (1969). The reasoning of these cases is that property not itself taxable can be used as a measure of the tax imposed on property within the state and that to do so is "in no just sense a tax on the foreign property." Maxwell v. Bugbee, 250 U.S. at 539, 40 S.Ct. at 6. The income in the taxing state is merely being taxed at an increased rate pursuant to a progressive system of taxation premised on the individual's ability to pay. See Wheeler, 249 A.2d at 890. On this same reasoning, the mere inclusion of military compensation in a formula determining the rate of tax on income from Kansas sources does not constitute a tax on the military income of a nonresident individual.[3]
 
 
 14
 The United States further contends, however, that the required liberal construction of the SSCRA transcends the reasoning of these authorities and must be broad enough to prohibit inclusion of military pay in calculating rates of tax on other income. Not only is there no direct support for that position, the decision of the United States Supreme Court in Sullivan v. United States, 395 U.S. 169, 89 S.Ct. 1648, 23 L.Ed.2d 182 (1969), even though referring to sales and use taxes, makes clear that the Act cannot be interpreted beyond its plain language and express purpose. The Court stated: "Section 514 does not relieve servicemen stationed away from home from all taxes of the host State. It was enacted with the much narrower design 'to prevent multiple State taxation of the property.' " Id. at 180, 89 S.Ct. at 1654. In terms of actual statutory language, Sullivan presented a much closer question than that presented here.
 
 
 15
 We should not seek out conflicts between state and federal regulations where none clearly exist. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 130, 98 S.Ct. 2207, 2216, 57 L.Ed.2d 91 (1978); Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 45, 86 S.Ct. 1254, 1260, 16 L.Ed.2d 336 (1966); Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 446, 80 S.Ct. 813, 817, 4 L.Ed.2d 852 (1960). We will not read into the SSCRA the attenuated meanings urged by the United States. The judgment of the district court is affirmed.
 
 
 
 [1]
 Kan.Stat.Ann. Secs. 79-32,109(h), 79-32,110(a) and (b), 79-32,116, 79-32,117 (1984). For a discussion of precisely how the income of nonresident military personnel is taxed under these Kansas statutes, see the district court opinion, United States v. State of Kansas, 580 F.Supp. 512 at 514 (D.Kan.1984)
 
 
 [2]
 Not every nonresident military person who is stationed in Kansas is subject to the higher tax rate. The situation typically occurs because the spouse of a nonresident military person earns Kansas source income and the couple files a joint Kansas tax return. Although the United States admits that the higher tax rate on a spouse's Kansas source income could be avoided by filing separate tax returns, such separate returns may not be filed if the couple has filed a joint federal tax return. Kan.Stat.Ann. Sec. 79-32,115(d), (e) (1984)
 
 
 [3]
 There is no question that Kansas has endeavored to explicitly comply with the SSCRA's mandate concerning tax residency of military personnel stationed in Kansas. Kan.Admin.Regs. Sec. 92-12-6 provides that "[f]or purposes of [the Kansas income tax act] a person will not be deemed to be a resident of Kansas, nor will he lose his status as a resident of the state in which he formerly resided solely because of a transfer into this state under military orders." Administrative regulations in Kansas have the same force as statutes. Kan.Stat.Ann. Sec. 77-425 (Supp.1985); Jones v. The Grain Club, 227 Kan. 148, 605 P.2d 142, 144 (1980); Harder v. Kansas Comm'n on Civil Rights, 225 Kan. 556, 592 P.2d 456, 459 (1979)