**Benny FATT, Petitioner,**

v.

**UTAH STATE TAX COMMISSION,
Respondent.**

No. 930385.

Supreme Court of Utah.

Oct. 27, 1994.

Bruce M. Plenk, Salt Lake City, and Henry S. Howe, Window Rock, AZ, for Benny Fatt.

Jan Graham, Atty. Gen., Michelle Bush, Asst. Atty. Gen., for the Tax Com'n.

HOWE, Justice:

Petitioner Benny Fatt petitions this court for a writ of review of a Utah State Tax Commission decision assessing Utah income tax on the pay he received while serving in the United States Navy.

The parties stipulated to the following facts: Benny Fatt is a member of the Navajo Tribe and lives on the Navajo Reservation in Monument Valley, Utah. He was born and has lived his entire life on the reservation except for four years when he served in the United States Navy in Long Beach, California. He did not abandon his domicile on the reservation while serving in the Navy, and he always intended to return to his home there when his tour of duty was completed. His sole income during his naval service was wages paid to him by the Navy.

Fatt did not file a Utah income tax return to report his naval income for 1989. The Tax Commission determined that his wages were taxable and sent him a deficiency notice for Utah income tax in the amount of $599.36, plus penalty and interest. He petitioned for

redetermination of the assessment, and the matter went to formal hearing. The Tax Commission upheld its previous determination that his off-reservation income was taxable by the State. Fatt seeks review.

We afford no deference to the Tax Commission's conclusions of law, reviewing them for correctness only. Utah Code Ann. § 59–1–610(1)(b) (Supp.1993).

■ The Tax Commission concedes that it could not impose income tax on any wages Fatt might earn on the reservation. *See McClanahan v. Arizona Tax Comm'n,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). There, the Supreme Court held that Indians on the reservation are not subject to state taxation except by virtue of express authority conferred upon the state by an act of Congress.[1] However, the Tax Commission points out, "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114, 119 (1973); Felix S. Cohen, *Handbook of Federal Indian Law* 416 (Rennard Strickland et al. eds., 1982 ed.). The Tax Commission maintains that Fatt was "a resident of [both] the *State of Utah* and the Navajo Nation while he was serving in the U.S. Navy" and when he left the reservation he lost his immunity from state taxation. Consequently, the Commission argues, his off-reservation income could be taxed the same as any other Utah resident's income.

Fatt counters that his naval wages are protected from taxation by the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. § 574 app. (1988), which states in pertinent part:

(1) For the purposes of taxation in respect of any person, or of his personal property, income, or gross income, by any State, Territory, possession, or political subdivision of any of the foregoing, or by the District of Columbia, *such person shall not be deemed to have lost a residence or domicile in any State, Territory, possession, or political subdivision of any of the foregoing, or in the District of Columbia, solely by reason of being absent therefrom in compliance with military or naval orders,* or to have acquired a residence or domicile in, or to have become resident in or a resident of, any other State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia, while, and solely by reason of being, so absent.

(Emphasis added.) This section preserves the home domicile of members of the armed services even though they may be living in another state. *Sullivan v. United States,* 395 U.S. 169, 173–74, 89 S.Ct. 1648, 1651, 23 L.Ed.2d 182, 186–87 (1969); *see* Utah Admin.R. 865–9–2I(E) (1994). Section 574 "merely states that the taxable domicile of servicemen shall not be changed by military assignments." *Dameron v. Brodhead,* 345 U.S. 322, 325, 73 S.Ct. 721, 723, 97 L.Ed. 1041, 1045 (1952). Consequently, the section forecloses the host state from taxing the personal property of members of the armed services. *California v. Buzard,* 382 U.S. 386, 393, 86 S.Ct. 478, 483, 15 L.Ed.2d 436, 441–42 (1966).

While section 574 is silent as to whether members of the armed services lose the immunity from taxation which they enjoyed in their home state, we think it is a logical and necessary corollary to retaining their domicile that their tax status there remains undisturbed as well. Anything less than that does not preserve, for purposes of taxation, the status quo of persons entering the armed services. It appears that such preservation is the overriding principle in section 574. Thus, persons entering the service carry with them the same tax immunity which they

---

**1.** "[T]here is no rigid rule by which to resolve the question whether a particular state law may be applied to an Indian reservation or to tribal members." *White Mt. Apache Tribe v. Bracker,* 448 U.S. 136, 142, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665, 671–72 (1980). There are no "'mechanical or absolute conceptions'" to apply. *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 176, 109 S.Ct. 1698, 1707, 104 L.Ed.2d 209, 226 (1989) (quoting *White Mt. Apache Tribe,* 448 U.S. at 145, 100 S.Ct. at 2584); *see Anderson v. Wisconsin Dep't of Revenue,* 169 Wis.2d 255, 262, 484 N.W.2d 914, 923 (1992) (Abrahamson, J., dissenting) (noting the "chaotic" state of the law in this area and the lack of any "manageable judicial" preemption standard).

previously enjoyed in their home state. We reject the Tax Commission's contention that Fatt's income should be treated the same as income he might have earned off the reservation in nonmilitary employment. That interpretation of the Act would result in Fatt's bearing a burden he would not have borne had he not left the reservation to serve his country. We refuse to give section 574 this narrow reading, which would partially erode the beneficence intended by Congress in its passage of the Act by exposing Fatt's wages to additional tax liability.

■ This interpretation of the Soldiers' and Sailors' Civil Relief Act comports with general guidelines which have been enunciated by other courts. The Act is to be interpreted liberally and in favor of those in the armed services. *United States v. State of Illinois*, 387 F.Supp. 638, 641 (E.D.Ill.1975). A court must read the Act " 'with an eye friendly to those who dropped their affairs to answer their country's call.' " *Buzard*, 382 U.S. at 387 (quoting *LeMaistre v. Leffers*, 333 U.S. 1, 6, 68 S.Ct. 371, 373, 92 L.Ed. 429, 433 (1948)). The judiciary should resolve all reasonable doubts under the Act in favor of military personnel, *Godwin v. Gerling*, 362 Mo. 19, 30, 239 S.W.2d 352, 359 (1951), and construe the Act in light of its "paternal policy" and consistent with its " 'broad spirit of gratitude.' " *Patrikes v. J.C.H. Serv. Stations, Inc.*, 180 Misc. 917, 41 N.Y.S.2d 158, 166 (N.Y. City Ct. 1943) (quoting *Benedict v. Higgins*, 165 A.D. 611, 151 N.Y.S. 42, 44 (1915)). Additionally, we have concurred in stating, "The underlying purpose of servicemen's legislation has been to enlarge, not to restrict or cut down the rights and protection afforded those in the military service." *Day v. Jones*, 112 Utah 286, 293, 187 P.2d 181, 184 (1947).

■ The conclusion we have reached also accords with the general principle that doubtful expressions in legislation are to be resolved in favor of Indians. *McClanahan*, 411 U.S. at 174, 93 S.Ct. at 1263; *see Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753, 759 (1985) (confirming that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit."). As the United States Supreme Court has articulated, federal law should be construed generously in favor of Indian sovereignty and federal policy encourages tribal independence. *Cotton Petroleum Corp.*, 490 U.S. at 177, 109 S.Ct. at 1708; *see White Mt. Apache Tribe v. Bracker*, 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2583–84, 65 L.Ed.2d 665, 673 (1980); *see also* Philip P. Frickey, *Congressional Intent, Practical Reasoning, and the Dynamic Nature of Federal Indian Law*, 78 Cal.L.Rev. 1137, 1141 (1990) ("According to conventional wisdom, the essential point of the canons [of statutory construction] is to encourage narrow construction against invasions of Indian interests and broad construction favoring Indian rights.").[2]

■ Finally, the Tax Commission contends that Fatt's wages are taxable under the "derived directly test" adopted in *Squire v. Capoeman*, 351 U.S. 1, 9, 76 S.Ct. 611, 616, 100 L.Ed. 883, 890 (1956). It asserts that this test looks at the source of the income earned by an Indian, and inasmuch as Fatt's income stems from the Navy, it is taxable because it is not derived directly from the reservation. In reality, this test is concerned with the federal taxability of Indian trust lands allocated under the General Allotment Act of 1887, *Squire*, 351 U.S. at 3, 76 S.Ct. at 613, and it focuses on the taxability of the income "directly" derived from the land itself. *Saunooke v. United States*, 806 F.2d 1053, 1056 (Fed.Cir.1986). For example, timber or crops from reservation lands are nontaxable, but the operation of a motel or a

---

**2.** Fatt also relies on the Buck Act, 4 U.S.C. §§ 105, 106, 109, to argue that federal law exempts him from paying income taxes. The Buck Act provides that residents of a federal area are not immune from state tax liability. Section 109, however, makes an exception for "Indian[s] not otherwise taxed." The Supreme Court has interpreted section 109 as referring to reservation Indians earning their income on the reservation. *McClanahan v. Arizona Tax Comm'n*, 411 U.S. 164, 176–77, 93 S.Ct. 1257, 1264–65, 36 L.Ed.2d 129, 136 (1973); *see LaRoque v. State*, 178 Mont. 315, 583 P.2d 1059, 1063 (1978). The affect of the Buck Act on the instant case and the precise meaning of "Indian[s] not otherwise taxed" are unclear, and we do not consider this law in light of our interpretation of the Soldiers' and Sailors' Civil Relief Act.

restaurant on the land is taxable. *See id.; see also Dillon v. United States,* 792 F.2d 849, 856 (9th Cir.1986). Because the "derived directly test" is useful only in that narrow circumstance, it is inapplicable to the instant case.

In light of the apparent congressional intent in section 574 of the Soldiers' and Sailors' Civil Relief Act and the rules of construction favoring members of the armed services and Indian sovereignty generally, we conclude that the Tax Commission lacks taxing jurisdiction over the income Fatt earned while in the Navy. We reverse the Tax Commission's assessment of tax and the denial of Fatt's petition for redetermination and remand for appropriate relief consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur.