SULLIVAN, TAX COMMISSIONER OF CONNECT-
ICUT, ET AL. *v.* UNITED STATES ET AL.

No. 610.   Argued April 2, 1969.—Decided May 26, 1969.

*F. Michael Ahern,* Assistant Attorney General of Con-
necticut, argued the cause for appellants.   With him on
the briefs were *Robert K. Killian,* Attorney General, and
*Ralph G. Murphy* and *Richard A. Gitlin,* Assistant
Attorneys General.

*Harris Weinstein* argued the cause for the United
States et al.   With him on the brief were *Solicitor Gen-
eral Griswold, Assistant Attorney General Walters,* and
*Stuart A. Smith.*

Briefs of *amici curiae* in support of appellants were
filed by the State of Louisiana and by the Attorneys
General for their respective States as follows: *MacDonald
Gallion* of Alabama, *Duke W. Dunbar* of Colorado, *Rob-
ert K. Killian* of Connecticut, *Earl Faircloth* of Florida,
*Arthur K. Bolton* of Georgia, *Kent Frizzell* of Kansas,
*John B. Breckinridge* of Kentucky, *James S. Erwin* of
Maine, *Francis B. Burch* of Maryland, *Robert H. Quinn*
of Massachusetts, *Frank J. Kelley* of Michigan, *Douglas
M. Head* of Minnesota, *John C. Danforth* of Missouri,
*Clarence A. H. Meyer* of Nebraska, *Harvey Dickerson* of
Nevada, *Arthur J. Sills* of New Jersey, *Robert B. Morgan*
of North Carolina, *Helgi Johanneson* of North Dakota,
*Paul W. Brown* of Ohio, *G. T. Blankenship* of Oklahoma,

Robert Y. Thornton of Oregon, William C. Sennett of Pennsylvania, Herbert F. DeSimone of Rhode Island, Gordon Mydland of South Dakota, George F. McCanless of Tennessee, Crawford C. Martin of Texas, Vernon B. Romney, Jr., of Utah, Robert Y. Button of Virginia, Slade Gorton of Washington, and James E. Barrett of Wyoming; by Gary K. Nelson, Attorney General, for the State of Arizona; by Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Philip W. Marking, Deputy Attorney General, for the State of California, and William J. Scott, Attorney General, for the State of Illinois; and by Louis J. Lefkowitz, Attorney General, Ruth Kessler Toch, Solicitor General, and Robert W. Bush, Assistant Attorney General, for the State of New York.

Benjamin M. Wall filed a brief for Stanley Fissel as amicus curiae in support of the United States et al.

MR. JUSTICE STEWART delivered the opinion of the Court.

The issue raised by this appeal is whether § 514 of the Soldiers' and Sailors' Civil Relief Act [1] prohibits Connecticut from imposing its sales and use taxes on servicemen stationed there who are residents or domiciliaries of other States. The United States instituted this action in federal court against the appropriate Connecticut officials on behalf of the aggrieved servicemen.[2]

[1] As added by § 17 of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942, 56 Stat. 777, and as amended, 58 Stat. 722, 76 Stat. 768, 50 U. S. C. App. § 574.

[2] Although the issue was raised in the District Court, the appellants no longer dispute the right of the United States to bring this action on behalf of the servicemen in federal court. See Department of Employment v. United States, 385 U. S. 355, 358; United States v. Arlington County, 326 F. 2d 929.

In this Court the United States has presented arguments prepared by officers of the Department of Justice in support of the judgment

The District Court entered a declaratory judgment that the federal statute prevents collection of the sales and use taxes from such servicemen,[3] and the Court of Appeals affirmed.[4] We noted probable jurisdiction of this appeal.[5]

The sales and use taxes imposed by the Connecticut Education, Welfare and Public Health Tax Act [6] are typical of those enacted by the vast majority of States.[7] A tax of $3\frac{1}{2}\%$ is levied on the gross receipts from sales of tangible personal property at retail within the State.[8] Although the retailer is liable for payment of the tax, he is required to pass it on to purchasers by adding it to the original sales price of all items sold.[9] The use tax is imposed at the same rate on "the storage, use or other consumption" in the State of tangible personal

below. The Solicitor General and the Assistant Attorney General in charge of the Tax Division of the Department of Justice have informed the Court, however, that they have not been persuaded by those arguments, and that they do not believe that § 514 was intended to apply to the ordinary retail sales tax and concomitant use tax now imposed by most of the States. For other examples of such divergence of opinion among representatives of the United States before this Court, see *De Laval Steam Turbine Co.* v. *United States,* 284 U. S. 61, 67–68; *Kornhauser* v. *United States,* 276 U. S. 145, 147–151.

[3] 270 F. Supp. 236. The District Court later amended its judgment to permit Connecticut to continue to collect sales and use taxes from nonresident servicemen, provided that the amounts collected would be refunded if the judgment was ultimately sustained.

[4] 398 F. 2d 672.

[5] 393 U. S. 1012.

[6] Conn. Gen. Stat. Rev. §§ 12–406 to 12–432a.

[7] See J. Hellerstein, State and Local Taxation Cases and Materials 15 (3d ed. 1969). 35 States have filed briefs in this case in support of the position of Connecticut.

[8] § 12–408 (1). This section also imposes the sales tax on "the privilege of . . . transferring occupancy of any room or rooms in a hotel or lodging house."

[9] § 12–408 (2).

property purchased from any retailer.[10]   The use tax provisions—designed to reach the use or consumption in the State of property purchased outside it [11]—exempt all transactions which are subject to the sales tax.[12]   And while the consumer is liable directly to the State for the use tax, he can discharge his liability by paying it to the retailer if the retailer is "engaged in business" within the State and therefore required to collect the use tax.[13] The use tax is also imposed upon purchasers of motor vehicles, boats, or airplanes from nonretailers.[14]   The amount of any tax under the Act is reduced by whatever sales or use tax has already been collected "by any other state or political subdivision thereof." [15]   Finally, the Act commands that all proceeds of the sales and use taxes "shall be allocated to and expended for public health, welfare and education purposes only." [16]

By stipulation and affidavits in the District Court, the parties offered some examples of the imposition of these taxes on naval personnel stationed in Connecticut but domiciled elsewhere.   Lieutenant Schuman, a Nebraska domiciliary, and Commander Carroll, a Michigan domiciliary, bought used motorboats from nonretailers in Connecticut and were assessed a use tax.   Schuman paid the tax under protest, and Carroll has refused to pay, each claiming that he is exempt under the Soldiers' and

[10] § 12–411 (1).

[11] See, e. g., Stetson v. Sullivan, 152 Conn. 649, 652–653, 211 A. 2d 685, 686; Avco Mfg. Corp. v. Connelly, 145 Conn. 161, 170–171, 140 A. 2d 479, 484; Connecticut Light & Power Co. v. Walsh, 134 Conn. 295, 299–300, 57 A. 2d 128, 130–131.

[12] § 12–413 (1).

[13] §§ 12–411 (2), (3).

[14] § 12–431.

[15] § 12–430 (5).

[16] § 12–432.

Sailors' Civil Relief Act.[17] Lieutenant Commander Shaffer and Commander Foster, who are domiciled in Pennsylvania and Texas respectively, each purchased a new car; the Connecticut retailer collected and paid the sales tax. Foster registered his car in Texas, which also exacted a sales or use tax.[18] Finally, Commander Roloff, whose home State is Wisconsin, purchased a used car in Florida and paid that State a 2% sales tax. When he registered the car in Connecticut, he was assessed and paid the use tax, with credit for the Florida sales tax.

As enacted in 1942,[19] § 514 of the Soldiers' and Sailors' Civil Relief Act provided that for purposes of any state "taxation in respect of any person, or of his [personal][20] property, income, or gross income," he shall not be

---

[17] Lieutenant Schuman joined the United States as a party plaintiff in the District Court, seeking to represent the class of all servicemen or former servicemen from whom Connecticut had collected or threatened to collect any sales or use tax. The complaint was dismissed as to him for lack of jurisdiction, on the grounds that the requisite jurisdictional amount was not alleged to be in controversy and that the Eleventh Amendment forbids a suit by a private individual against a State in the federal courts. 270 F. Supp. 236, 246–247.

[18] Foster's situation is not entirely clear. His affidavit states that officials of the Connecticut Department of Motor Vehicles informed him that he was required to pay a use tax but the tax actually paid was identified on the dealer's invoice as a sales tax. The latter seems to be correct, since the purchase was from a Connecticut retailer. Texas officials told Foster he would have to pay a sales tax in order to register the car in that State. The Texas tax collector's receipt does not identify whether the payment was a sales or use tax, however, and under the Texas statutes it appears more likely that it was the latter. Tex. Rev. Civ. Stat., Art. 6.01, provides that the motor vehicle sales tax applies only to sales in the State, while the use tax, in the same amount, applies to out-of-state sales of motor vehicles for use in Texas.

[19] 56 Stat. 777.

[20] The word "personal" was interpolated by the 1944 amendment. 58 Stat. 722.

deemed to have lost his residence or domicile in his home
State or acquired a residence in any other State "solely
by reason of being absent [from home] in compliance
with military or naval orders." Clarifying language was
added in 1944 to provide that for purposes of taxation
in respect of personal property, the "personal property
shall not be deemed to be located or present in or to
have a situs for taxation in such State." Also in 1944
Congress enacted a special subsection for automobiles:
servicemen are exempt from "licenses, fees, or excises
imposed in respect of motor vehicles or the use thereof"
if they have paid such levies in their home States. Fi-
nally, in 1962,[21] Congress added the provision that § 514
applies to property in any tax jurisdiction other than the
serviceman's home State, "regardless of where the owner
may be serving" in compliance with military orders.[22]

---

[21] 76 Stat. 768.

[22] Section 514, as set forth in 50 U. S. C. App. § 574, now reads
in its entirety as follows:

"(1) For the purposes of taxation in respect of any person, or of his
personal property, income, or gross income, by any State, Territory,
possession, or political subdivision of any of the foregoing, or by
the District of Columbia, such person shall not be deemed to have
lost a residence or domicile in any State, Territory, possession, or
political subdivision of any of the foregoing, or in the District of
Columbia, solely by reason of being absent therefrom in compliance
with military or naval orders, or to have acquired a residence or
domicile in, or to have become resident in or a resident of, any
other State, Territory, possession, or political subdivision of any
of the foregoing, or the District of Columbia, while, and solely by
reason of being, so absent. For the purposes of taxation in respect
of the personal property, income, or gross income of any such
person by any State, Territory, possession, or political subdivision
of any of the foregoing, or the District of Columbia, of which such
person is not a resident or in which he is not domiciled, compensa-
tion for military or naval service shall not be deemed income for
services performed within, or from sources within, such State,
Territory, possession, political subdivision, or District, and personal

We think it clear from the face of § 514 that state taxation of *sales* to servicemen is not proscribed. A tax on the privilege of selling or buying property has long been recognized as distinct from a tax on the property itself.[23]   And while § 514 refers to taxes "in respect of" rather than "on" personal property, we think it an overly strained construction to say that taxation of the sales transaction is the same as taxation "in respect of" the personal property transferred.   Nor does it matter to the imposition of the sales tax that the property "shall not be deemed to be located or present in or to have a situs for taxation" in Connecticut.   The incidence of the sales tax is not the property itself or its presence within the State.   Rather it is the transfer of title for considera-

property shall not be deemed to be located or present in or to have a situs for taxation in such State, Territory, possession, or political subdivision, or district.   Where the owner of personal property is absent from his residence or domicile solely by reason of compliance with military or naval orders, this section applies with respect to personal property, or the use thereof, within any tax jurisdiction other than such place of residence or domicile, regardless of where the owner may be serving in compliance with such orders: *Provided,* That nothing contained in this section shall prevent taxation by any State, Territory, possession, or political subdivision of any of the foregoing, or the District of Columbia in respect of personal property used in or arising from a trade or business, if it otherwise has jurisdiction.   This section shall be effective as of September 8, 1939, except that it shall not require the crediting or refunding of any tax paid prior to October 6, 1942.

"(2) When used in this section, (a) the term 'personal property' shall include tangible and intangible property (including motor vehicles), and (b) the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof: *Provided,* That the license, fee, or excise required by the State, Territory, possession, or District of Columbia of which the person is a resident or in which he is domiciled has been paid."

[23] See, *e. g.,* N. Jacoby, Retail Sales Taxation 3–4 (1938).   And see n. 28, *infra.*

tion,[24] a legal act which can be accomplished without the property ever entering the State.[25] Had Congress intended to include sales taxes within the coverage of § 514, it surely would not have employed language so poorly suited to that purpose as "taxation in respect of the personal property."

It is contended on behalf of the servicemen that, even if § 514 does not encompass sales taxes, at least it prohibits taxation of the *use* of personal property. Not only are use taxes said to fall literally within the meaning of the phrase "taxation in respect of the personal property," but § 514 specifically refers in two places to property "or the use thereof." Moreover, it is argued, the sole jurisdictional basis of the use tax is the location of the personal property in Connecticut; yet imposition of a tax with such incidence on a serviceman contravenes the command of § 514 that his personal property "shall not be deemed to be located or present in or to have a situs for taxation in such State." While we agree that use taxes are not so clearly excluded by the language of § 514 as are sales taxes, neither do we believe that they are clearly included. And consideration of the purpose and legislative history of § 514 along with its language and other factors has led us to the conclusion that Congress did not intend to free servicemen stationed away from home from the sales *or* use taxes of the host State.

The legislative history of the 1942 enactment and the 1944 and 1962 amendments of § 514 reveals that Congress intended the Act to cover only annually recurring taxes *on* property—the familiar ad valorem personal

---

[24] The Connecticut statute defines a "sale" generally as "[a]ny transfer of title . . . for a consideration." § 12–407 (2) (a). And see *Avco Mfg. Corp.* v. *Connelly,* 145 Conn. 161, 172, 140 A. 2d 479, 484–485. The term also includes a transaction in which the right of possession is transferred but the seller retains title as security. § 12–407 (2) (f).

[25] See Conn. Gen. Stat. Rev. § 42a–2–401 (3).

property tax. Thus, the reports advert to the possibility that servicemen ordered to move around the country—as they were increasingly during World War II—might have their property taxed by more than one State "within the same calendar year." [26] And the reports throughout refer explicitly to "personal-property taxes on property." [27] The language of these reports is simply irreconcilable with the proposition that Congress thought the Act would apply to a tax which, like the sales or use tax, does not apply annually to all personal property within the State but is imposed only once and then only when there has been a retail sales transaction.[28]

---

[26] S. Rep. No. 1558, 77th Cong., 2d Sess., 11 (1942); H. R. Rep. No. 2198, 77th Cong., 2d Sess., 6 (1942).

[27] S. Rep. No. 959, 78th Cong., 2d Sess., 1 (1944). See also the reference to "personal property taxes" in H. R. Rep. No. 1514, 78th Cong., 2d Sess., 2 (1944). The reports on the 1942 Act talked about "taxation of the property" and the possibility that "the personal property . . . may become liable for taxes in several States." S. Rep. No. 1558, *supra*, n. 26, at 11; H. R. Rep. No. 2198, *supra*, n. 26, at 6. At the time of the 1962 Amendment, the reports continued to describe the taxes covered by § 514 as those "imposed upon property of a serviceman." S. Rep. No. 2182, 87th Cong., 2d Sess., 1 (1962); H. R. Rep. No. 2126, 87th Cong., 2d Sess., 1 (1962).

[28] It has frequently been said that a use tax, like a sales tax, is an excise or privilege tax different in kind from a tax *on* property. *E. g., Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, 93; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, 649. As the Connecticut Supreme Court has described the very tax here in question, "The use tax is not a tax on property but is described in the act as, and in fact is, in the nature of an excise tax upon the privilege of using, storing or consuming property." *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 307, 57 A. 2d 128, 134. This distinction may sometimes be more formal than actual, cf. *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 582, 586. But its long-time general acceptance supports the conclusion that when Congress talked about taxes on, or even "in respect of," personal property, it did not thereby include use taxes.

This conclusion is further buttressed by the close interconnection of sales and use taxes. See generally 3 State Taxation of Interstate

The absence of any reference to sales and use taxes in the history of § 514 is particularly illuminative of legislative intent when considered in the light of Congress' full awareness of such state taxes and their relationship to federal interests. Sales and use taxes were prevalent by 1942,[29] and Congress had dealt specifically with them only two years earlier. In the 1940 Buck Act,[30] Congress provided that the States have "full jurisdiction and power to levy and collect" sales and use taxes in "any Federal area," [31] except with respect to the sale or use of property sold by the United States or its instrumentalities through commissaries, ship's stores, and the like.[32] If nothing

---

Commerce, H. R. Rep. No. 565, 89th Cong., 1st Sess., 607–620 (1965). As a complement to the sales tax and an integral part of a single broad pattern of excise taxes, the use tax is not likely to have been grouped by Congress with taxes "in respect of the personal property."

[29] By 1938, more than half the States had adopted sales and use taxes. See 3 State Taxation of Interstate Commerce, *supra*, n. 28, at 609.

[30] 54 Stat. 1059, now 4 U. S. C. §§ 105–110.

[31] 4 U. S. C. § 105 (a) states:

"No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

[32] 4 U. S. C. § 107 states:

"(a) The provisions of sections 105 and 106 of this title shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser.

"(b) A person shall be deemed to be an authorized purchaser under this section only with respect to purchases which he is permitted to make from commissaries, ship's stores, or voluntary unincorporated organizations of personnel of any branch of the

else, this statute illustrates that Congress in 1942 was fully cognizant of state sales and use taxes and identified them by name when it wanted to deal with them. Moreover, it is unlikely that Congress, which had in 1940 expressly authorized sales and use taxation of servicemen everywhere on federal military reservations except post exchanges, would two years later have exempted so many of them from such taxes by means of such imprecise language as that of § 514 of the Soldiers' and Sailors' Civil Relief Act. And since servicemen can apparently purchase all the necessities and many of the luxuries of life tax-free at military commissaries,[33] Congress may reasonably have considered the occasional sales and use taxes that servicemen might have to pay an insignificant burden, as compared with annual ad valorem property taxes, and consequently not deserving of the same exemption.[34]

---

Armed Forces of the United States, under regulations promulgated by the departmental Secretary having jurisdiction over such branch."

[33] The stipulation filed in the District Court contained the following:

"11. Most of the day-to-day purchases of tangible personal property, which includes food, clothing, toilet articles and other personal items, made by servicemen in Connecticut are made from military exchanges, and commissaries operated by the armed services on military installations.

"12. Sales made by military exchanges and commissaries operated by the armed services on military installations to servicemen are not subject to any tax under the Tax Act."

[34] Conversely, the administrative burden which the States would have to shoulder if § 514 applied to sales and use taxes is potentially far greater than that attributable to the exemption from ad valorem property taxes. Whereas property taxation involves only the property owner and the tax officials, sales and use taxation usually requires participation and accounting by the seller as well. And the accounting difficulties which retailers and the States would encounter in determining for thousands of transactions which customers were properly exempt under § 514 are considerably greater than any that Congress can be thought to have envisioned for the exemption from property taxes alone.

Section 514 does not relieve servicemen stationed away from home from all taxes of the host State. It was enacted with the much narrower design "to prevent multiple State taxation of the property." [35] And the substantial risk of double taxation under multi-state ad valorem property taxes does not exist with respect to sales and use taxes. Like Connecticut, nearly every State which levies such taxes provides a credit for sales or use taxes paid on the transaction to another State.[36] Of course it is true, as we held in *Dameron* v. *Brodhead*, 345 U. S. 322, that § 514 prevents imposition of ad valorem property taxes even though the serviceman's home State does not tax the property. But the predominant legislative purpose nonetheless remains highly relevant in determining the scope of the exemption, and the absence of any significant risk of double taxation under state sales and use taxes generally is therefore strong evidence of congressional intent not to include them in §514.

The language of § 514 does not undercut our conclusion that Congress did not propose to exempt servicemen from sales and use taxes. The appellees, like the courts below, make much of the reference at two places in the section to property "or the use thereof." This phrase first appeared in the 1944 addition of subsection (2)(b):

"When used in this section, . . . (b) the term 'taxation' shall include but not be limited to licenses,

---

[35] S. Rep. No. 1558, *supra*, n. 26, at 11; H. R. Rep. No. 2198, *supra*, n. 26, at 6. This purpose was restated in the 1944 reports: "When the Soldiers' and Sailors' Civil Relief Act of 1940 was amended by the act of October 6, 1942, a provision was written into the act to relieve persons in the service from liability of double taxation by being moved from one State to another under orders." H. R. Rep. No. 1514, *supra*, n. 27, at 2. And see S. Rep. No. 959, *supra*, n. 27, at 1.

[36] See Prentice-Hall State and Local Tax Service, All States Unit, ¶ 92,963.

> fees, or excises imposed in respect to motor vehicles or the use thereof: *Provided,* That the license, fee, or excise required by the State . . . of which the person is a resident or in which he is domiciled has been paid."

The second reference to "use" did not appear until the addition to subsection (1) of the following sentence in 1962:

> "Where the owner of personal property is absent from his residence or domicile solely by reason of compliance with military or naval orders, this section applies with respect to personal property, or the use thereof, within any tax jurisdiction other than such place of residence or domicile, regardless of where the owner may be serving in compliance with such orders . . . ."

We think that, in light of the clear indications of congressional intent discussed above, the most sensible inference to be drawn from this language is that the only taxes on the *use* of property from which servicemen are exempted are the special registration taxes imposed annually by all States on the use of motor vehicles. Indeed, this interpretation is supported by the structure of § 514 itself. There is no reference to "use" of property in those portions of subsection (1) which set out the basic exemption and in which Congress would naturally have been expected to mention use taxes had it meant to include them. Moreover, subsection (2)(b) does *not* say that for purposes of § 514 "taxation" includes "licenses, fees, or excises" on the use of *all* personal property except those in respect of motor vehicles for which such fees have not been paid at home. Rather it says that "taxation" includes such levies *only on motor vehicles* when they have been paid at home. Thus, as we held in *California* v. *Buzard,* 382 U. S. 386, subsection (2)(b) does not encompass ordinary revenue-raising

excise or use taxes, but is limited to "those taxes which are essential to the functioning of the host State's licensing and registration laws in their application to the motor vehicles of nonresident servicemen." *Id.*, at 395. The Court held in *Buzard* that § 514 exempted servicemen from the California tax on automobiles, not because it *was* an excise tax on use covered by subsection (2)(b), but rather because it was *not* such a tax.[37] The so-called "license fee" there in question was an annual tax in the amount of 2% of the assessed market value of the car—a levy which was indistinguishable from the annually recurring ad valorem taxes that § 514 was designed to cover.[38]

It is thus evident that in subsection (2)(b) Congress was dealing solely with a unique form of state "tax"— the motor vehicle registration fee. Because such fees are not always clearly classifiable as property taxes,[39] servicemen would not be exempted from many of them by subsection (1) of § 514. Since annually recurring license fees raise much the same risk of double taxation to transitory military personnel as do property taxes, Congress evidently decided in 1944 to extend the exemption of § 514 to include motor vehicle registration fees as well as property taxes. From 1944 to 1962 the only reference in § 514 to "use" of property was found in

---

[37] See also *Snapp v. Neal*, 382 U. S. 397, 398: "We reverse on the authority of our holding today in *Buzard* that the failure to pay the motor vehicle 'license, fee, or excise' of the home State entitles the host State only to exact motor vehicle taxes qualifying as 'licenses, fees, or excises'; the ad valorem tax, as the Mississippi Supreme Court acknowledged, is not such an exaction."

[38] Indeed, the Court in *Buzard* emphasized that the tax had been adopted by California "as a substitute for local ad valorem taxation of automobiles." 382 U. S., at 395, n. 9. California's sales and use taxes were not involved in that case.

[39] See *California v. Buzard*, 382 U. S., at 394, n. 8, for the various methods by which States impose registration or license fees on motor vehicles.

subsection (2)(b). And, in view of the narrow purpose of that subsection and the absence for 20 years of any other reference to "use" in § 514, we cannot believe the repetition of that word in the 1962 amendment—described by Congress as a mere clarification of the existing law [40]—can be deemed to have added all use taxes to the coverage of the statute. The 1962 amendment merely reflected the prior reference to the "use" of motor vehicles in subsection (2)(b).

Finally, we find unpersuasive the appellees' contention that, since the Connecticut use tax can be applied only with respect to personal property used within the State, its imposition on servicemen away from home cannot be squared with the declaration of § 514 that "personal property shall not be deemed to be located or present in or to have a situs for taxation in such State." That clause is modified by the opening words of the sentence—"[f]or the purposes of taxation in respect of the personal property." Section 514, therefore, does not in terms relieve servicemen from every state tax which is somehow dependent on the presence of personal property within the State. Rather, it provides only that a State cannot justify imposing the taxes to which § 514 was initially intended to apply—annually recurring ad valorem property taxes—on the ground of the property's presence within the State.

---

[40] "This bill amends the tax immunity provisions of the Soldiers' and Sailors' Civil Relief Act . . . *so as to clarify* a situation which sometimes results in taxation contrary to the intent of the act. More specifically, the bill provides that where a serviceman is absent from his residence or domicile solely by reason of compliance with military or naval orders, *the tax immunity provision of existing law shall apply with respect to his personal property, or the use thereof,* within any tax jurisdiction other than his State of residence or domicile, regardless of where such serviceman may be located in compliance with such orders." (Emphasis supplied.) S. Rep. No. 2182, *supra,* n. 27, at 1.

This construction is confirmed by the explanation which Congress itself gave for the addition in 1944 of the language on which the appellees rely:

> "The purpose of the proposed legislation is to clarify the intent of section 514 of the Soldiers' and Sailors' Civil Relief Act . . . . When that provision of law was added to the act to relieve persons in service from liability of double taxation by being moved from one State to another under orders, it was intended that it should apply to personal-property taxes as well as to income taxes. As presently constituted, it primarily affects taxes in respect to income and other taxes based on residence or domicile, but it does not prevent the State of 'temporary residence' from taxing tangible personal property actually located in such State so long as the tax does not depend on residence or domicile. A few States have taken the position that tangible personal property of military personnel who are only temporarily within their jurisdiction does not acquire a situs for taxation, but it has been held that section 514 of the act as now written does not affect the right of a State to assess personal-property taxes on property within its jurisdiction." [41]

The 1944 amendment, therefore, had only the limited purpose "to clarify" Congress' original intent to cover "personal-property taxes on property," not to expand the exemption in a manner which would include sales or use taxes.

For these reasons we hold that § 514 of the Soldiers' and Sailors' Civil Relief Act does not exempt servicemen from the sales and use taxes imposed by Connecticut. Accordingly, the judgment is

*Reversed.*

---

[41] S. Rep. No. 959, *supra*, n. 27, at 1.