[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
This action is an appeal and a petition for a declaratory judgment. The plaintiff characterizes the matter as a proceeding that challenges the decision of the Connecticut Board of Medical Examiners that it had no jurisdiction — prior to the filing of a formal public statement of charges by the Connecticut Department of Public Health (Department) — to issue a ruling keeping confidential a contemplated licensure action by the defendant Department. In December 1995 in cooperation with the State Medical Society Physician Health Program (the Program), the defendant Department determined the plaintiff would be an appropriate candidate for participation in a rehabilitation program authorized by § 20-13e of the General Statutes. Subsection (b) of that statute provides that:
 "upon commencement of the rehabilitation program by the physician during his (sic) continued participation in such program in accordance with the terms agreed upon by the department and the physician, all records shall remain confidential."
The plaintiff entered the Program and participated in it. Despite this, the plaintiff was informed on June 11, 1996 that the Department intended to make public a Consent Order or Statement of Charges against the plaintiff Doe. On April 18, 1997, the plaintiff filed with the Board a petition for a declaratory ruling to determine the applicability of the above referenced statutory language providing for confidentiality of individuals involved in a rehabilitation program. The petition was based also on a claimed violation of state and federal constitutional rights and the exposure to public ridicule and CT Page 2484 disfavor and damage to business and professional reputation that would result to the plaintiff if any proceedings against the plaintiff were made public.
On June 17, 1997, the Board denied the petition; the basis of the Board's decision was its conclusion that it had no jurisdiction over the relief requested in the petition because no statement of charges had been filed at the time the petition was made to the Board. On June 26, 1997, the plaintiff then filed this action and was granted permission to proceed in this case with a pseudonym status. In this case, the plaintiff appealed from the Board's decision denying the petition for confidentiality during proceedings before the Board. The plaintiff also filed a petition for declaratory judgment. An order staying all proceedings against the plaintiff disclosing his/her identity by the Department or the Board pending determination of its appeal and petition for declaratory judgment was also requested. It would appear that on June 27, 1997 a judge of this court granted the order which remains in effect.
As noted, this matter was filed in this court June 26, 1997. On the same date, the statement of charges was filed by the Department with the Board.
Under the statutory scheme, the Department, acting in a prosecutorial fashion, refers charges to the Board after an investigation, § 20-13(e)(a)(e). The Board is given the power to suspend or revoke licenses to practice medicine, § 20-8(a)(f).
1.
The defendant Department has now moved to dismiss this action for lack of subject matter jurisdiction due to the alleged failure of the plaintiff to exhaust administrative remedies.
When a motion to dismiss does not seek to introduce facts outside the record before the court hearing the motion, it admits all well pleaded facts and the complaint is construed most favorably to the plaintiff. Duguay v. Hopkins, 191 Conn. 222, 227
(1983). Of course there may be a need and there is a value in using affidavits to assert facts which are not disputed — if such affidavits are introduced, a court can rely on them and needs not conclusively presume the validity of the complaint's allegations.Barde v. Board of Trustees, 207 Conn. 59, 62 (1988). The latter observation would also be true as to evidentiary facts developed CT Page 2485 at a hearing that is considered necessitated by the filing of a motion to dismiss.
No evidentiary hearing was held here and no affidavits were submitted. However, both sides throughout their briefs and arguments made broad references to a variety of "facts" established by the purported administrative record before the Connecticut Board of Medical Examiners (the Board) from which this present appeal lies or gleaned from reports and matter outside even that "record." Query whether these are the type of facts or undisputed facts the court can rely on to decide a jurisdictional question? There seems to be no good reason, however, why the court cannot consider admissions made by either party or facts which from an examination of the material submitted to the court on this motion are undisputed. But absent such circumstances when deciding such a motion, which depends on resolution of a disputed issue of fact, the court cannot make a finding as to that fact by relying on briefs or documents submitted by the parties. Bradley's Appeal from Probate,19 Conn. App. 456, 466-467 (1989).
2.
As noted, this motion was filed based on a theory that the plaintiff's suit should be dismissed due to a failure to exhaust administrative remedies. In a supplemental brief filed by the defendant, it is also argued that the plaintiff does not have a current right to appeal under the Uniform Administrative Procedure Act, § 4-166 et seq. of the General Statutes. The court concludes there is a right to appeal under § 4-183(b) of the General Statutes. That statute reads that:
 "A person may appeal a preliminary procedural or intermediary agency action or ruling to the Superior Court if (1) it appears likely that the person will otherwise qualify under this chapter to appeal from the final agency action of ruling; and (2) postponement of the appeal would result in an inadequate remedy."
The defendant argues that the Board ruled it had no jurisdiction to issue the requested petition or declaratory ruling filed by the plaintiff before the Board. This decision therefore terminated any declaratory ruling proceeding and therefore cannot be characterized as "preliminary, procedural or CT Page 2486 intermediate" in nature for § 4-183(b) purposes.
But the plaintiff certainly should have a right to question the Board's decision as to lack of jurisdiction considering the immediate injury threatened by the filing of public charges. Section 4-183(b) was specifically created as an exception to the exhaustion doctrine and why should it not apply in a situation where the Board may have declined to exercise the jurisdiction it in fact had.
In fact, it is difficult to understand how, in light of §20-8(a)(f) of the General Statutes, it can be argued that the Board here had no jurisdiction to pass on the plaintiff's request for a declaratory ruling regarding the confidentiality of the proceedings. Section 20-8(a)(f) reads in relevant part:
 "Said Board shall (1) hear and decide matters concerning suspension or revocation of licensure; (2) adjudicate complaints against practitioners; and (3) impose sanctions where appropriate."
What purpose does subsection (1) serve but recognize the power of the Board as an independent hearing agency to preliminarily determine the practice and procedure to be followed in any adjudication about to take place before the Board. Subsection (2) obviously is concerned with the actual hearing on the merits. If there is a colorable claim of a right to confidentiality, the statute in fact ought to be interpreted in this way since, absent such jurisdiction in the Board and a right to appeal under § 4-183(b), where would the party go to relief but to the courts? That is, the very filing of public charges is an injury that the physician with such a confidentiality claim can seek to prevent. Recognizing the jurisdiction of the Board to have entertained a petition such as the one filed here by the plaintiff would, oddly enough, satisfy some of the same goals sought to be achieved by the exhaustion doctrine. Thus, in the first instance, the Board would deal with the confidentiality claim not a court by way of requests for injunctive relief if no relief were available from the board.
Furthermore, postponement of the appeal on this issue "would result in an inadequate remedy" in § 4-183(b) terms because of the very nature of the relief sought and the threatened departmental action. This case is not like John Doe v.Connecticut Department of Health, CV97-0569472. "Inadequacy of CT Page 2487 remedy" is not a fungible concept that can be applied as a test in, all cases no matter what the claim. The court in the just mentioned case noted explicitly that charges there were already a matter of public record. The claim raised was that the Department failed to conclude its investigation with the statutorily prescribed period of eighteen months. The court denied the physician's motion to dismiss because given the issue raised, postponement of the appeal until the Board's final decision would not result in an inadequate remedy within the meaning of § 4-183(b). For the reasons mentioned, that is not the case here.
3.
The court will now discuss the exhaustion of administrative remedies doctrine as it applies to this case and the motion to dismiss.
The law is clear that "if an adequate administrative remedy exists, it must be exhausted before the superior court will obtain jurisdiction to act in the matter." Connecticut MobileHome Ass'n. V. Jensen's, Inc., 178 Conn. 586, 588 (1979). Why do the courts hold that that is so?
For one thing, administrative agencies have been established on the state and federal level so that they could develop expertise in an area subject to regulation and, in so doing, they may be in a better position than general courts of law to decide matters lying within their area of expertise. The doctrine encourages orderly procedural ways of handling sometimes complex problems and relieves the courts of the burden of deciding matters entrusted to an agency with expertise and rules of procedure that may permit a more expeditious mechanism than that provided by the courts to handle these matters. Enforcing the doctrine allows a court, that later has to review the agency's decision, the chance to benefit from the agency's findings. See generally Cannatta v. Dept. of Environmental Protection,215 Conn. 616, 625, 635 (1990), cf. McKart v. United States,395 U.S. 182, 194 (1969).
Discussions of subject matter jurisdiction can become somewhat esoteric especially when combined with issues such as sovereign immunity and exhaustion of administrative remedies. The court will take a functional approach keeping the just mentioned and important interests in mind. CT Page 2488
It may be helpful to view the issues raised in a temporal context. Did the court have jurisdiction when the matter was first filed or perhaps, to put the question more exactly considering the issues presented, should the court be held to have had jurisdiction at that time despite the requirement demanding that administrative remedies be exhausted — does the doctrine even apply?
Assuming the action was filed before the public statement of charges was filed in Hartford, and there is nothing in the record compelling another assumption, it is difficult to understand why the court would not have jurisdiction based on the theory that administrative remedies had not been exhausted.
The plaintiff certainly had standing and there was a controversy capable and ready for adjudication. The interest the plaintiff sought to protect and which the plaintiff feared would be lost has a statutory, constitutional and common law basis. The defendant has not raised and the court would not have much reason to recognize a position that said common law courts could not protect a citizen's interest in litigating a statutory or constitutionally based right to pseudonym status in the courts or the ability of such a claimant to require a state agency to protect pseudonym status in the appropriate case. At the time the action was filed, there was the possibility of real injury being inflicted unless relief was granted — that is enough for standing.
Would the doctrine of exhaustion of administrative remedies compel a finding, however, that the court had no jurisdiction? Here the contemplated injury was, as the plaintiff had been informed, that the Department was about to file a public statement of charges. The very filing of the charges publicly was an aspect of the claimed injury.
The plaintiff in fact petitioned the board that the proceedings against the plaintiff be confidential. The board, as noted, on June 17, 1997 ruled that it had no jurisdiction to rule on the petition since the public statement of charges had not been filed. But as noted the public filing of the charges was one aspect of the injury against which the plaintiff believed it had a right to secure protection. The court has discussed the policy reasons supporting the exhaustion of administrative remedies doctrine. There is in fact one limited exception to the requirement of the exhaustion of administrative remedies: "Where CT Page 2489 the available relief is inadequate or futile the administrative process may be bypassed" Norwich v. Norwalk Wilbert Vault Co.,208 Conn. 1, 4 (1988), Bianco v. Darien, 157 Conn. 548, 554
(1969), Silverman v. New Haven, 19 Conn. App. 360, 365 (1989). In fact § 4-183(b) itself reflects this exception to the requirement that administrative remedies be exhausted before there is resort to the court, Polymer Resources Inc. v. Keeney,227 Conn. 545, 561 (1993). Obviously in such a situation none of the stated reasons for the exhaustion requirement would apply and any "benefits" that might accrue by applying the doctrine would not outweigh the harm to the citizen who is deprived thereby of an adequate forum to protect his or her rights. The procedural advantages of applying the doctrine make no sense where its application would destroy the very right sought to be protected.
Here the board held it had no jurisdiction to take action to rule on the plaintiff's petition asserting rights to confidentiality under state statute and based on constitutional claims. Where an administrative agency has no jurisdiction to afford the requested relief or declines to exercise the jurisdiction it does have the futility and inadequacy exception to the exhaustion requirement are met by definition. See Marescav. Ridgefield, 35 Conn. App. 769, 772-773 (1994), Cannatta v.D.E.P., 215 Conn. 616, 628 (1990), Golden Hill Paugussett Tribeof Indians v. Weicker, 39 F.3d 51, 58 (CA 2, 1994), cf Guitard v.U.S. Secretary of Navy, 967 F.3d 737, 741 (CA2, 1992), Riggins v.Board of Fire and Police Commissioners, 437 N.E.2d 327, 328 (Ill, 1982), Texas Education Agency v. Cypress-Fairbanks et al,830 S.W.2d 88, 90 (Tex, 1992).
The defendant also suggests that administrative remedies were not exhausted because the plaintiff did not request the relief it sought from the Commissioner of public Health or the Department itself — this could have been done independently of any relief that it sought from the board. Would an appeal to these agencies have been "futile or inadequate"? As far as the option of applying to the Department is concerned the mere fact that the Department had decided on filing charges would not bar the application of the exhaustion doctrine. It has been held that "a mere conclusory assertion that an agency will not reconsider its decision does not excuse compliance with the exhaustion requirement," Polymer Resources Ltd v. Keeney, 227 Conn. 545, 562
(1993), cf Housing Authority v. Papandrea, 222 Conn. 414, 428-432
(1992). More than conclusory assertions are involved here, however. Apparently the rehabilitation program the plaintiff was CT Page 2490 involved in is run as a program of the state medical association. The defendant's own brief states that in the spring of 1996 the Department told the program it did not feel the plaintiff's case could be resolved by way of a confidential agreement. In July 1996 "the Department met with Dr. Doe's attorney and advised the attorney that the Department was not willing to agree to a confidential resolution of this matter," (page 6, 7/16/97 Brief). The department closed its file which had set up the rehabilitation program and "opened a Department file in anticipation of filing charges against Dr. Doe's license," id page 6. This was done in June 1996 and "the Department communicated its intentions in this regard to the plaintiff" who in April 1997 requested the board that it proceed on a confidential basis. It is apparent that the department had arrived at a fixed prosecutorial position as was its right to do, the plaintiff's lawyer had met with department representatives — under these circumstances how can it be said that assertions of the futility of reapproaching the department to change its mind about the confidentiality issue would be "conclusory". InEllingson Associates Inc. v. Keefe, 410 N.W.2d 857, 860 (Minn. 1989) the court said: "Where the concerned administrative bodies have unequivocally committed themselves to a determination of the issue challenged, the doctrine of exhaustion of administrative remedies does not require that futile attempts at administrative relief be taken before seeking a judicial determination", also see Wolff Selective Service Local Board No. 16, 372 F.2d 817, 825
(CA 2, 1962), State Board of Medical Examiners v. Olson,206 N.W.2d 12, 17 (Minn. 1973).
There is, at least to the court, a more significant problem with advancing an exhaustion argument based on the fact that the plaintiff did not request a confidentiality ruling from the Department or the Commissioner of Public Health. Given the statutory definition in § 4-166 the board would appear to be an "agency" distinct from the Department and not subject to the Commissioner's control in exercising its independent adjudicative functions in determining revocation or suspensions of licenses. Cf Davis v. Board of Examiners in Podiatry, 207 Conn. 674, 682
(1988). Minimal requirements of due process would require this in any event.
Once the Department in its prosecutorial capacity has determined to bring charges to the Board, the Board has an obligation to ensure and regulate the nature of the proceedings in any contested matter that is about to come before it. An CT Page 2491 important consideration in regard to this, when raised by a party, is whether the hearing that is about to commence is to be open to the public or conducted confidentially.
Whether such a determination is made by a court in an ordinary civil case or an agency in charge of licensure hearings the determination is necessarily fact bound, Doe v. DioceseCorporation, 43 Conn. Sup. 152. The particular circumstances of the person claiming confidentiality must be examined, id. Page 160, Doe v. Stegall, 653 F.2d 180, 186 (CA5, 1981). Not only must a strong showing be made justifying confidentiality but the right to so proceed, considering the strong public interest in open hearings, is not a right the parties have as against each other; the court or agency hearing the contested matter must determine the question as against the demands of that public interest, Doev. Diocese Corporation, id at page 158. In light of the public interest the parties should not even be able to agree between themselves as to whether there should be pseudonym status (cf Doev. Diocese Corporation at page 162, suit there between two private parties both claiming pseudonym status but same reasoning applies.) In light of these interests and considerations once prosecution is decided upon how can the person about to be proceeded against apply to the Department or Commissioner thereby usurping the role of the statutorily created independent agency authorized to conduct any hearing and thus required to determine its character and mode of operation? The court also rejects this aspect of the defendant's exhaustion argument that application was not made to the Department or the Commissioner.
In light of the foregoing discussion the motion to dismiss cannot be granted on the basis of the argument that administrative remedies have not been exhausted. However, this decision presents difficulties which the court believes must be discussed. A court always has the power to modify its orders especially those issued as here, ex parte.
The difficulties presented are not necessarily a function of the merits of the issues raised by both sides but due to the rigidity of the rules on the subject matter jurisdiction in light of the peculiar problems raised by a rightful concern for the policies which demand exhaustion of administrative remedies. In other words, at the point suit was filed here and immediate ex parte relief was sought by the plaintiff the court beliefs that there was subject matter jurisdiction to entertain the action and issue the order. CT Page 2492
But the relief sought and the stay granted by the court have nothing to do with the actual merits of the issue of whether this plaintiff's license should be suspended or revoked. What was and is before the court is only the question of the confidentiality of any of the Board proceedings to determine the merits of any charges filed. It would be an intolerable restriction on the right of the board to perform its functions and the strong public interest in having these licensure proceedings proceed expeditiously and fairly to allow an ancillary issue such as confidentiality to delay a hearing on the merits before the board.
That is, even if the Board was incorrect in deciding that it had no jurisdiction to entertain a petition as to confidentiality prior to charges being filed, the fact is that charges have now been filed. The board even concedes it now has jurisdiction to entertain the plaintiff's request for confidentiality and the board, not any Superior Court judge, is the appropriate body to determine in the first instance whether confidentiality should be given here. For the reasons behind exhaustion of administrative remedies doctrine it has the expertise to determine the appropriate ambit of § 20-13e of the general statutes and the importance of confidentiality concerns as opposed to the public interest in open hearings in the very profession whose licensing it is charged with monitoring. Moreover, as the very agency which will conduct any hearing it is uniquely qualified to conduct the factual inquiry and evidentiary inquiry required when a confidentiality request is made, see Doe v. Diocese Corporation, supra.
A motion to dismiss appears to be an inappropriate vehicle to attack the court's subject matter jurisdiction based on failure to exhaust administrative remedies but an appeal can become moot and however that issue can or might be raised the court can control the scope and nature of any orders it has issued to the Department or the Board.
The court believes an appropriate way to resolve the important competing concerns raised by the prior order issued in this case and by the fact that it is denying this motion is to make the following observations concerning modifications of its prior order and how any such order shall operate:
(1) the motion to dismiss is denied CT Page 2493
 (2) in light of the fact that (a) charges have now been filed before the Board, (b) the court's previous order should not delay a hearing on the merits before the board and (c) the board is the most appropriate forum initially to decide any confidentiality claim in the first instance, the plaintiff should file an appropriate request with the board that the hearings be conducted on a confidential basis in light of § 20-13(e) or any other grounds on which a confidentiality claim is based
 (3) any such request should be filed within two weeks from the date of this decision and failure to file such a request will permit the defendant to request that any orders issued by the court in this matter be dissolved
 (4) pending resolution of this issue by the board all orders issued by the court shall remain in effect as to the confidentiality of any proceedings on the merits before the board but proceedings in this action will otherwise be stayed.
 (5) if the board's decision is adverse to the plaintiff, it is expected that the plaintiff will appeal to the court in the statutory time limits, and if the plaintiff does so present court orders will remain in effect pending a hearing on that appeal.
 (6) none of the just mentioned court orders should be construed to prevent or are meant to delay any hearing before the board on the underlying merits of the licensure action against the plaintiff as long as they conform to orders of the court providing for confidentiality.
 (7) this action shall remain as a pendant matter in this court and the court shall and CT Page 2494 should retain jurisdiction to ensure that the plaintiff has a forum to protect his or her confidentiality claim even in the eventuality that the board rejects that claim and the superior court on appeal sustains the board. In other words pursuant to a Cohen v. Beneficial Industrial Loan Corp, 337 U.S. 541 (1949 analysis if the plaintiff loses the request for confidentiality before the board and loses an appeal of that decision to the Superior Court, the court would retain jurisdiction to consider allowing confidential status to remain in effect pending appeal to an appellate court. The position adopted by the court is implicit in the observations of the court in Doe v. Diocese Corporation, supra at 43 Conn. Sup. 167-168 or the interests sought to be protected in Cohen would be meaningless. It is an open question which the court need not decide now whether Cohen dictates that such an order of confidentiality be kept in effect pending appeal under any and all circumstances.
The motion to dismiss is denied and the court would request the parties to contact its clerk to formalize the continuing ambit of previously issued orders of the court and express their opinion on the propriety of any of the court's suggested modification of orders that have been previously issued.
CORRADINO, J.