[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this case is whether the defendant, Town of East Windsor, must apportion its property tax levied upon the motor vehicles owned by the plaintiff Penske Truck Leasing Co., LP ("Penske"), which are garaged in East Windsor, but used in interstate commerce, and subject to property taxes in other states.
Penske filed a two count complaint. In count one, Penske challenges, pursuant to General Statutes § 12-117a, the valuation placed upon its motor vehicles located in East Windsor on the grand list of October 1, 1996.[1] In count two, Penske challenges, pursuant to General Statutes § 12-119, the legality of the property tax imposed upon its motor vehicles that are used in interstate commerce because the tax is not apportioned based upon use in other states. Penske filed this motion for partial summary judgment on the second count. With the motion for partial summary judgment, Penske filed a memorandum of law, a "Statement CT Page 5833 of Facts," and an affidavit by Jay Bouder, a Penske Property Tax Analyst. The defendant filed memoranda of law in opposition to the motion for partial summary judgment. For purposes of this motion, the defendant stipulated to all of the facts set forth in Penske's "Statement of Facts," with the exception of paragraphs 15 and 17.[2]
Penske operates a commercial truck leasing and rental business regional facility in East Windsor. Penske is the owner of certain motor vehicles registered in Connecticut and garaged at its facility at 10 Shoham Road, East Windsor. The East Windsor assessor assessed these motor vehicles on its grand list of October 1, 1996. The total value of the assessment of Penske's fleet of vehicles in East Windsor was $4,166,670 on the October 1, 1996 grand list.
Penske contends that the town of East Windsor's personal property tax levied against its fleet of vehicles used interstate is in violation of the Commerce Clause, Article I, § 8, cl. 3 of the United States Constitution, because East Windsor imposes a full tax without apportionment based upon interstate use.
General Statutes § 12-43 provides that a nonresident's personal property is subject to a municipality's property tax, if the property is located within the state of Connecticut for three consecutive months per year. In its memorandum in support of its motion for partial summary judgment, Penske notes that "[m]otor vehicles registered in Connecticut are referred by the Commissioner of Motor Vehicles to the local assessor for taxation. [General Statutes] § 12-71 (b) et seq. The result is that the Town assesses and levies personal property taxes on any vehicle operated out of East Windsor and registered in Connecticut." (Penske's memorandum, p. 3.) Penske claims that Connecticut's statutory scheme of personal property taxes extends full taxation on vehicles used in interstate commerce, which directly clashes with the Commerce Clause.
Our Connecticut statutes do provide for an apportionment of registration fees of commercial vehicles used interstate; see General Statutes § 14-34a; but not property taxes on vehicles used interstate.
The Commerce Clause is implicated when two or more states impose an ad valorem tax on the same tangible personal property without apportionment. Central R. Co. v. Pennsylvania, 370 U.S. 607, 612,82 S.Ct. 1297, 1301, 8 L.Ed.2d 720 (1962). "[M]ultiple taxation is possible only if there exists some jurisdiction, in addition to the domicile of the taxpayer, which may constitutionally impose an ad valorem tax." Id. The court in Central R. Co. placed the burden on the taxpayer "who contends that some portion of its total assets are beyond the reach of CT Page 5834 the taxing power of its domicile to prove that the same property may be similarly taxed in another jurisdiction." Id., 613. This means that the taxpayer must prove that the same property has acquired situs in more than one state. Id. An example of multiple taxation would be if East Windsor imposed an ad valorem property tax imposed on Penske's vehicles, registered and garaged in Connecticut for three months, and three other states also imposed an ad valorem tax because under their laws, the vehicles had also acquired a tax situs in those states, subjecting the same vehicles to an ad valorem property tax by four states. See OklahomaTax Commission v. Jefferson Lines, Inc. 514 U.S. 175, 184-85,115 S.Ct. 1331, 131 L.Ed.2d 261, reh. denied, 514 U.S. 1135, 115 S.Ct. 2018,131 L.Ed.2d 1016 (1995). This case holds that any threat of malapportionment of taxes must be looked at "by asking the question of whether the tax is `internally consistent', and if so whether it is `externally consistent' as well." Id., 185. Internal consistency occurs when all of the taxing states impose the same identical tax so that there is no burden on interstate commerce that is different from the tax the intrastate commerce would bear. Id. However, in our example, Penske could be paying a property tax for a full year of taxes by being in Connecticut only three months, and at the same time pay a full year of property tax on the same vehicle to three other states. This certainly would place Penske at a disadvantage by placing interstate commerce at the mercy of all of the states which might impose the same identical tax. Id. UnderJefferson Lines, "[a] failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction." Id. On its face, if Penske's vehicles were being assessed for a full year's tax, and these same vehicles were assessed an identical tax by other states for the same period of time, there would be a malapportionment of the property taxes of the several states. External consistency, on the other hand, looks to the economic justification for the state's claim upon the value taxed, to discover whether the tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing state. Id.
Our next inquiry must be whether the tax imposed by East Windsor is identical with the taxes imposed by Kentucky. The immediate distinction between the East Windsor tax and the taxes assessed by Kentucky is that the East Windsor tax is based, by Connecticut statute, on situs having been acquired by registration in Connecticut and garaging the vehicles in Connecticut for three or more months. The Kentucky tax is assessed against Penske's vehicles on the basis of the number of miles driven in the state over the total number of miles driven by the same vehicle for the full period of taxation.
In order to determine whether the tax imposed by East Windsor's tax is identical to that of Kentucky, our analysis leads us to the question of CT Page 5835 whether Penske has proven that its vehicles registered and garaged in East Windsor have acquired a tax situs in some other state besides Connecticut. This would require an apportionment of the property taxes under Complete Auto Transit v. Brady, 430 U.S. 276, [430 U.S. 274], 287, 97 S.Ct. 1076
976, 51 L.Ed.2d 326, reh. denied, 430 U.S. 976, 97 S.Ct. 1669,42 L.Ed.2d 1669 (1977).
In determining whether the application of our Connecticut personal property tax laws to Penske's vehicles violates the Commerce Clause, we must look to the four pronged test set out in Complete Auto. UnderComplete Auto, a state tax will withstand scrutiny under the Commerce Clause if "[t]he tax is applied to an activity with substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." Complete Auto Transit v. Brady, supra, 430 U.S. 279. In Complete Auto, Mississippi levied a tax on the privilege of doing business in Mississippi on a motor carrier transporting automobiles manufactured out of state between points within the state. The tax was a sales tax based on 5% of the gross sale to be added to the price at the time the sales price was collected. In upholding the Mississippi tax, the court in Complete Auto stated: "It is a truism that the mere act of carrying on business in interstate commerce does not exempt a corporation from state taxation. It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business." (Citations omitted; internal quotation marks omitted.) Id., 288.
Penske only contests the issue of whether the Connecticut tax should be fairly apportioned under the Complete Auto Transit test. Penske's argument is that it should not have to pay property taxes to East Windsor and to Kentucky on the same vehicle that is used in interstate commerce during the same period of time.
Situs of property for tax purposes is determined when the taxing state has sufficient contact with the personal property sought to be taxed to justify in fairness the particular tax. Town of Cady v. AlexanderConstruction Co., 12 Wis.2d 236, 107 N.W.2d 267, 270 (1961). In Cady,
the issue was whether construction equipment brought into Wisconsin . . . for less than a year and not used in transit or merely passing through, had sufficient contacts with the state to acquire a taxable situs which would justify a personal property tax by the state. The court in Cady concluded that the equipment received the benefits of Wisconsin laws, the same as similar property owned and used by Wisconsin residents, and such property was, therefore, subject to the tax. Id., CT Page 5836 271.
In the present action it, it is incumbent upon Penske to establish that the vehicles registered in Connecticut and garaged in East Windsor had established a situs in the State of Kentucky and/or in any other states, and that these states imposed an ad valorem property tax upon these vehicles during the period of time that East Windsor taxed these same vehicles. Central R. Co. v. Pennsylvania, supra, 370 U.S. 613-14. See also Ryder Truck Rental v. County of Chesterfield, 248 Va. 575,449 S.E.2d 813, 816 (1994).
Penske does not contest that East Windsor had situs to impose an ad valorem property tax upon the Penske's vehicles registered in Connecticut and garaged in East Windsor. Penske does claim that because the State of Kentucky imposes a tax upon these same vehicles that are driven a certain number of miles in Kentucky, that this tax is equivalent to the East Windsor ad valorem tax and should be apportioned with the East Windsor tax.
Penske's statement of facts and an affidavit supporting those facts state Kentucky participates in the International Registration Plan (IRP) program and that it assesses a property tax upon the Connecticut vehicles operating in Kentucky according to the number of miles operated in Kentucky. We must decide whether the Kentucky tax on tangible personal property based upon mileage is equivalent to situs and is an ad valorem property tax for the purposes of apportionment.
Property taxes are "taxes assessed on all property . . . located within a certain territory on a specified date in proportion to its value, . . . [with] the obligation to pay which is absolute and unavoidable," and the purpose of which is to raise revenue. 71 Am.Jur.2d, State and Local Taxation § 24, 26. In Connecticut, the authority for East Windsor to impose a tax on Penske's personal property is "absolutely defined by the grant of taxing power from the legislature, and is limited to expressly granted powers or those that exist by necessary implication." Burwell v. Board of Selectmen, 178 Conn. 509,517, 423 A.2d 156 (1979). An excise tax, on the other hand, is the voluntary act of the taxpayer in performing some act, enjoying some privilege, or engaging in an occupation which is the subject of the excise. 71 Am.Jur.2d, State and Local Taxation, § 28. Although an excise tax may be a revenue tax, it is distinguished from a property tax, "in that it is imposed upon the right to exercise a privilege, and its payment is made a condition to the exercise of the privilege involved." Id., § 29. Double taxation may exist under multi-state ad valorem taxes, but not with respect to excise taxes such as sales and use taxes. See Sullivan v. United States, 395 U.S. 169, 182, 89 S.Ct. CT Page 5837 1648, 23 L.Ed.2d 182 (1969). Whereas a tax on personal property is applied annually, a sales and use tax is applied only once when the retail transaction is made. Id., 177. Although Penske classifies the Kentucky tax as an ad valorem property tax, this tax is in reality a tax for the privilege of driving on the highways of Kentucky. Although Penske points out that the Kentucky tax on Penske vehicles is based upon miles driven in Kentucky and on the value of the vehicle, it still is not a property tax because the tax is levied on the privilege of driving on the highways of Kentucky, not because the vehicles have acquired some permanency which could ripen into situs. 71 Am.Jur.2d, State and Local Taxation § 24. Taxing property twice is not double taxation unless the tax is for the same purpose, and the purpose is accomplished through the use of the same type of tax. See Redwood Theatres v. Modesto,86 Cal.App.2d 907, 196 P.2d 119 (1948). In the present action, East Windsor has imposed a property tax upon Penske's tangible personal property for the purpose of raising revenue for East Windsor. The tax imposed by Kentucky on the. same tangible personal property was an excise tax for the privilege of using the Kentucky highways. An excise tax and an ad valorem tax cannot be apportioned since they serve different purposes.
Accordingly, since there has been no factual showing that the Kentucky tax on the Penske vehicles is the same as the tax by East Windsor, or that Penske has acquired a situs in Kentucky for the purpose of assessing an ad valorem tax, this motion for partial summary judgment must fail. Penske has not met its burden of proving that the assessment of property tax by East Windsor based upon the situs of the vehicles in East Windsor violates the Commerce Clause under the Complete Auto test. Penske's motion for partial summary judgment is denied.
Arnold W. Aronson Judge Trial Referee